ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,
A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California 95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

Attorneys for Plaintiff
DANIELLE LOKEY

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE LOKEY, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No: 3:20-cv-04782-LB<br><br>Hon. Magistrate Judge Laurel Beeler<br><br>**PLAINTIFF DANIELLE LOKEY'S REPLY IN SUPPORT OF MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>**[28 U.S.C. § 1447]**<br><br>Date:   September 10, 2020<br>Time:   9:30 a.m.<br>Place:  Courtroom B, 15th Floor<br><br>Complaint Filed: May 11, 2020<br>Removal Filed:   July 16, 2020 |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENTS ................................................. 1

II. DEFENDANT HAS NOT MET ITS HEAVY BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH CAFA DIVERSITY JURISDICTION .................................................................................................. 4

    A. Defendant applies faulty logic and the wrong standards to reach a grossly inflated restitution figure. ................................................................................. 4

    B. Defendant inflated its estimated cost of injunctive relief by inventing unreasonable and unnecessary restrictions on how it might offer that relief. .......... 6

    C. Defendant cannot rely on a crude estimate of attorney's fees as 25% of restitution. ................................................................................................ 12

    D. The total amount in controversy for purposes of determining whether CAFA diversity jurisdiction exists is far less than $5,000,000. ............................ 12

III. DEFENDANT HAS NOT MET ITS HEAVY BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH DIVERSITY JURISDICTION UNDER 28 U.S.C. §§ 1332(A) AND 1441(B) ..................................... 13

V. CONCLUSION ................................................................................................................ 15

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

# **TABLE OF AUTHORITIES**

**Federal Cases**                                         **Page(s)**

*Abrego v. The Dow Chemical Co.*,
    443 F.3d 676 (9th Cir. 2006) .................................................................................................. 3

*Boris v. Wal-Mart Stores, Inc.*
    35 F. Supp. 3d 1163 (C.D. Cal. 2014) ..................................................................................... 7

*Boston Reed Co. v. Pitney Bowes, Inc.*,
    2002 U.S. Dist. LEXIS 11683 (N.D. Cal., June 20, 2002) ................................................... 14

*Doe v. Aetna, Inc.*,
    2018 U.S. Dist LEXIS 57771 (N.D. Cal., Apr. 4, 2018) ...................................................... 14

*Duncan v. Stuetzle*,
    76 F.3d 1480 (9th Cir. 1996) .................................................................................................. 4

*Emrich v. Touche Ross & Co.*
    846 F.2d 1190 (9th Cir. 1988) ................................................................................................ 3

*Forcellati v. Hyland's Inc.*,
    876 F. Supp. 2d 1155 (C.D. Cal. 2012) .................................................................................. 4

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
    899 F.3d 785 (9th Cir. 2018) .......................................................................................... 12, 15

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) .................................................................................................. 3

*Madison v. U.S. Bancorp*,
    2015 U.S. Dist. LEXIS 9361 ................................................................................................ 14

*McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S.D.) N.A.)*,
    264 F.3d 952 (9th Cir. 2001) ................................................................................................ 14

*Nishimoto v. Federman-Bachrach & Assocs.*,
    903 F.2d 709 (9th Cir. 1990) .................................................................................................. 3

*Phipps v. Praxair, Inc.*,
    1999 U.S. Dist. LEXIS 18745 (S.D. Cal., Nov. 12, 1999) ................................................... 14

*Sanchez v. Monumental Life Ins. Co.*,
    102 F.3d 398 (9th Cir.1996) ................................................................................................... 3

*Snyder v. Harris*,
    394 U.S. 332 (1969) ............................................................................................................. 14

*Yumul v. Smart Balance, Inc.*
    733 F. Supp. 2d. 1117 (C.D. Ca. 2010) .................................................................................. 6

*Zahn v. International Paper Co.*,
    414 U.S. 291 (1973) ............................................................................................................. 14

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

**Federal Statutes**

28 U.S.C.
 § 1332 ........................................................................................................................ 1, 3, 13, 14
 § 1441 ........................................................................................................................1, 3, 13, 14
 § 1447 ................................................................................................................................... 1

**Rules**

California Rules of Court,
 Rule 9 ............................................................................................................................. 5, 6

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

I.     **INTRODUCTION AND SUMMARY OF ARGUMENTS**

Defendant's liabilities to the putative class are not trivial.  But analyzed correctly, they are nowhere near the $5,000,000 needed to establish jurisdiction under CAFA or the $75,000 required to establish diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b).  The amount-in-controversy analyses under 28 U.S.C. §§ 1332(a) and 1441(b) and CAFA do not simply sweep in ***all imaginable*** attorneys' fees, costs, restitution, and amounts spent on providing injunctive relief.  Rather, as the Ninth Circuit and its District Courts have made clear, each category includes only specific items, and all of those items are subject to appropriate ***proof*** by Defendant.

Here, Defendant

- consistently has applied the wrong standards in determining which items should be included in calculating each amount in controversy,
- has failed to provide the proof required to support its calculations and, ultimately,
- has failed to establish that this case meets the amount in controversy under either jurisdictional test.

In short, Defendant has not demonstrated that removal was proper.

In proposing its grossly inflated estimate of the amount in controversy for CAFA removal purposes, Defendant spends much time attacking a straw man.  But contrary to Defendant's contention, Plaintiff has not argued that restitution, attorneys' fees, and the cost of injunctive relief cannot be aggregated for purposes of determining the amount in controversy under CAFA.  The ability to aggregate those items in CAFA calculations does not, however, end the analysis.

Rather, Defendant still bears the burden of proving each amount to be included in the calculation.  In its attempt to reach the $5,000,000 threshold, Defendant asks the Court to accept unreasonably inflated amounts for two components:  restitution and injunctive relief.  And it has failed to provide evidence sufficient to assign any dollar estimate to the third:  attorneys' fees.

Regarding restitution, Defendant asserts that a full refund of the sale price of each bottle of Infants' acetaminophen ("Infants'") bought by putative class members during the class period is the appropriate measure.  That is plainly incorrect.  Plaintiff does not claim that the Infants' the class members purchased had zero value.  Plaintiff simply contends that it was overpriced, and

that the excessive price was driven by Defendant's sales and marketing practices. The obvious and medically equivalent alternative to buying Infants' would have been to buy the less expensive Children's acetaminophen ("Children's"). The appropriate and obvious measure of restitution is the difference in the per-ounce price between Infants' and Children's multiplied by the number of ounces bought by Plaintiff and putative class members during the class period.

Regarding injunctive relief, Defendant's estimate of the costs is based on Defendant's insistence on its own idiosyncratic (and inflated) form of injunctive relief. It is as expensive a form of relief as one could invent. It is relief that Plaintiff does not seek and that no court could require on the basis of Plaintiff's claims.

Defendant insists that, instead of simply adjusting the price of its Infants' *in California*, it must do all of the following:

- remove and destroy all existing product in stores and distribution centers **nationwide**;
- stop selling Infants' **nationwide** for at least 26 weeks as it develops and produces new packaging;
- incur costs associated with a **nationwide** recall and destruction of Infants'; and
- destroy all of the 90 days' supply of the Infants' product and packaging held by the manufacturer at its facilities.

The opposition offers no authority for its implied proposition that the Court must accept Defendant's self-imposed, outlandish version of what it would have to do to comply with its imaginary injunctive relief. Moreover, it has offered no evidence to explain the basis for those self-imposed restrictions: Query, why can't Defendant simply lower the per-ounce price of Infants' to match Children's in California? Or why can't Defendant remove stock from California stores and sell it nearby states? Or why must Defendant destroy all stock on hand nationwide to comply with an injunction that is limited to California? Or if Defendant really did have to stop selling in California rather than simply lowering the price, why does it have to cease all sales nationwide rather than just in here?

Finally, regarding attorney's fees, Defendant simply multiplies its grossly-inflated estimate of restitution by 25%. That is an approach that the Ninth Circuit has rejected.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  Defendant also notes the hourly rates charged by Plaintiff's attorneys in previous cases but offers no evidence to support an estimate of the hours likely to be worked by Plaintiff's attorneys in this case. With a multiplicand but no multiplier there can be no product. Thus, a reasonable estimate of attorneys' fees cannot be determined from the incomplete evidence Defendant has provided.

Defendant's attempt to meet the $75,000 amount in controversy for diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b) is similarly strained and unsupported.

By failing to address the issue in its opposition, Defendant apparently has dropped its misguided argument in its Notice of Removal that the total cost of compliance with injunctive relief should be considered in calculating the amount in controversy under 28 U.S.C. §§ 1332(a) and 1441(b).[1] Thus, its argument now rests solely on its failed attempt to meet the $75,000 threshold by attributing to Plaintiff far more than her fair share of the total attorneys' fees. The correct question is not what the putative class's total attorneys' fees will be, but whether Plaintiff's ***pro rata share*** of those fees will meet the $75,000 threshold. It will not come close.

In her Motion, Plaintiff noted that Defendant submitted no evidence with its removal petition.[2] Defendant now has submitted a declaration. Nonetheless, as discussed below, it still has failed to meet its heavy burden to "*provide evidence* that it is '**more likely than not**' that the amount in controversy" satisfies the federal diversity jurisdictional amount requirement."[3]

Put simply, Defendant has not provided evidence sufficient to establish that this case meets the amount-in-controversy threshold required for this Court to exercise jurisdiction under either CAFA or §§ 1332(a) and 1441(b). Thus, Defendant has not met its burden of proving that removal is proper.[4]

---

[1] Dkt. No. 4 (Defendant's Notice of Removal), ¶ 34.
[2] Dkt. No. 18, 5:10-8:7; *see* Dkt. No. 4 (Defendant's Notice of Removal).
[3] *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006) [emphasis added], quoting *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996).
[4] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992) ("The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." (*citing Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.* 846 F.2d 1190, 1195 (9th Cir. 1988)).

Given the strong presumption against removal jurisdiction,[5] and the Ninth Circuit's admonition that removal and diversity jurisdiction statutes ***must be strictly construed in favor of remand***,[6] this case must be remanded to state court.

## II. DEFENDANT HAS NOT MET ITS HEAVY BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH CAFA DIVERSITY JURISDICTION

### A. Defendant applies faulty logic and the wrong standards to reach a grossly inflated restitution figure.

We do not understand how the Complaint could be read to suggest that Plaintiff seeks a full refund for each bottle of Infant's sold in California. As Defendant notes, Plaintiff alleges that had she known that the medicine was the same as in the Children's acetaminophen product, she "would not have purchased the far-more-expensive Infants'."[7] Plaintiff's obvious alternative to buying the deliberately-overpriced Infants' product would have been to purchase the Defendant's Children's product instead. The underlying products are identical, after all. Thus, the proper measure of restitution is the difference in the per-ounce price between Infants' product and the Children's product multiplied by the number of ounces bought by Plaintiff and the putative class.

First, Defendant's full-refund model of restitution relies on the strange supposition that a purchaser's alternative to paying the inflated price for Infants' was to purchase no acetaminophen at all for the infant who needed it. It is not reasonable to assume that Defendant's customers are such poor parents, guardians and caregivers. Moreover, the case Defendant cites in support of its full-refund argument, *Forcellati v. Hyland's Inc.*,[8] is clearly distinguishable from the instant case. In *Forcellati*, the court considered whether a plaintiff had pleaded an ascertainable loss when he alleged that a product he bought had no value and was "nothing more than 'flavored water or sugar tablets.'"[9] The court in *Forcellati*, noted that the plaintiff in that case also "clearly state[d]

---

[5] *Id*.

[6] *Id*; *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996), holding that if the court has any doubts about its subject matter jurisdiction, the case must be remanded to state court. [Emphasis added.]

[7] *See e.g.*, Dkt. No. 4-1 (Exhibit A to Defendant's Notice of Removal – Plaintiff's Complaint), ¶ 51.

[8] 876 F. Supp. 2d 1155 (C.D. Cal. 2012).

[9] *Id.* at 1168.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

that he and the putative class members 'seek a refund and/or rescission of the transaction.'"[10]  On those two key grounds, *Forcellati* is clearly and unambiguously different from this case.[11]  First, Plaintiff never has contended that the Infants' acetaminophen product has no value.  At the heart of Plaintiff's case is the allegation that Defendant's Infants' and Children's have the same active ingredient in the same concentration and that "[n]o reasonable consumer would pay two and a half times as much per ounce and sometimes more to purchase Infants' acetaminophen over Children's acetaminophen unless he or she had been deceived into thinking that infants cannot safely take the Children's product."[12]  At no point does Plaintiff allege that Infants' is without value.  This case is about misleading marketing inflating a price.  It is not about selling a product with no value.  Second, Plaintiff never has asked for a full refund or rescission of her purchase of Defendant's Infants'.  Nor would she.  She received something of value for the money she spent.  She seeks only the amount she overpaid.

Returning to the central issue, the proper measure of the restitution that Plaintiff and the putative class are seeking is the difference in the per-ounce price between the Infants' product and the Children's product multiplied by the number of ounces Plaintiff and putative class members bought.  In her Complaint, Plaintiff alleges that Infants' was sold at a price per ounce of around two and a half times that of Children's.[13]  Defendant now has provided what it asserts are actual figures for total sales of Infant's in California or shipped to California: $2,277,798.44.[14]  (But even that figure is suspect.  As explained in fn. 15, the sales total reported by Ms. Molengraff includes a time period outside the statute of limitations.[15])

---

[10] *Id*.

[11] Moreover, the court in *Forcellati* was not considering an appropriate measure of restitution or any particular remedy.  Rather, it was determining whether that plaintiff had pleaded an ascertainable loss at all, which called for an entirely different analysis.

[12] Dkt. No. 4-1 (Exhibit A to Defendant's Notice of Removal – Plaintiff's Complaint), ¶ 5.

[13] *Id*.  Defendant has offered no comparable figure for the per-ounce premium charged for the same product in Children's acetaminophen when sold as Infants' acetaminophen.

[14] Dkt. No. 20-1 (Declaration of Hillary Molengraff ("Molengraff Decl.")), ¶ 7.

[15] Paragraph 7 of the Molengraff Decl. reveals that Defendant's $2,275,251 figure for total in-store sales appears to be exaggerated.  In describing the time period as being "from 2016 through August 15, 2020," it apparently includes the entirety of 2016.  The class period, however, reaches back only to April 6, 2016, four years before the tolling date set forth in Emergency Rule 9 of the

*(Cont'd)*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

The total sales figure is not the measure of restitution because the purchasers received some acetaminophen. If Infants' was being sold for 2.5 times the price of the equivalent amount of Children's, the overcharge was 1.5 times (i.e., 150% of) the price of the equivalent amount of Children's. That means that the price of Children's was 40% (1.0 divided by 2.5) of the price of the equivalent amount of Infants'. That, in turn, means that the rest – the other 60% of the sale price of Infants – was the overcharge.

Applying that 60% overcharge percentage to the $2,277,798.44 in total sales yields an overcharge of $1,366,679.06 ($2,277,798.44 x .60).[16] This estimate, while rough, is the best available from the very limited evidence that Defendant has provided. An alternative approach would be to decide that Defendant's evidence was too crude to be useful and, on that basis, to assign no value to restitution on the ground that Defendant has not met its evidentiary burden.

**B.     Defendant inflated its estimated cost of injunctive relief by inventing unreasonable and unnecessary restrictions on how it might offer that relief.**

Defendant insists on its own idiosyncratic and needlessly costly form of injunctive relief. It is the most expensive injunctive relief that one can imagine, one that Plaintiff does not seek, and one that no court would likely impose based on Plaintiff's claims. Thus, Defendant has not provided evidence that would enable the Court to satisfy itself that the cost of injunctive relief is high enough that, when added to appropriate figures for restitution and a reasonable estimate of attorney's fees, the total would even come close to the $5 million threshold.

Further, Defendant offers no authority to support its implicit claim that the Court should accept Defendant's self-imposed restrictions on its ability to provide injunctive relief.

---

California Rules of Court. *Yumul v. Smart Balance, Inc.* 733 F. Supp. 2d. 1117, 11130 (C.D. Ca. 2010). The 96-day period that Defendant gratuitously added to the 1,592-day period from April 6, 2016 through August 15, 2020 added 6.03% to the length of the period. It is a reasonable assumption that that added 6.03% to the total sales as well. Dividing the $2,275,251 figure by 1.0603 to correct for Defendant's overstatement lowers the figure to $2,145,852.84, a reduction of $129,398.16. Put another way, the $2,275,251 figure put forth by Defendant is a $129,398.16 overstatement.

[16] Even this number is inflated by $77,638.89 because Defendant included sales from outside the start of the April 6, 2016 limitations period ($2,277,798.44 - $129,398.16 x .60 = $1,289,040.17).

Unreasonable self-imposed restrictions are critical to Defendant's attempts to claim an absurdly high cost for that relief.

The simplest and most reasonable injunctive remedy for the Court to impose would be to require Defendant not to sell Infant's in California at a higher price per ounce than Children's. That would not necessitate any change in the packaging of either product.

Defendant has not explained how it would respond to such a directive from the Court. CVS reasonably could choose to **reduce prices** for Infant's acetaminophen in California. No estimate of the impact of such a price reduction on Defendant's gross profits is possible because Defendant has offered no evidence regarding the price elasticity of Infants' or the competitive dynamics of the marketplace. As a matter of pure economics, we reasonably can assume that Defendant would *sell more* Infants' at a lower price. Without more, we cannot quantify the net effect on CVS' gross profits. And that lack of information is Defendant's doing, not Plaintiff's.

Alternatively, Defendant could **adjust prices for both** Children's and Infants' in California so that the latter would not be sold at a per-ounce premium over the former. Again, with zero evidence from Defendant, it is not possible to estimate the impact those potential price changes might have on CVS' gross profits. Would the increased sales of Infant's offset any decreased sales of Children's? We cannot tell. Defendant does not even provide any evidence of the out-of-pocket cost of repricing Infants', Children's, or both. In sum, there is no figure for injunctive relief that the Court reasonably can use to calculate the amount in controversy.

The only authority Defendant cites for its proposition that a court may not require a pricing change is inapposite. In *Boris v. Wal-Mart Stores, Inc.* the plaintiff alleged, *inter alia*, that the pricing difference between two products, *by itself,* was misleading because the products had the same active ingredients.[17] The Court found that claim to be non-justiciable and dismissed the case at the pleading stage.[18] That is entirely different from Plaintiff's plainly justiciable claim that Defendant's Infants' *packaging* is misleading and is used to charge a higher price for Infants' than for Children's.

---

[17] 35 F. Supp. 3d 1163, 1166, 1171-72 (C.D. Cal. 2014).
[18] *Id.* at 1171-72.

Moreover, Plaintiff does not suggest that the Court should order a price change or set specific price levels for Defendant's acetaminophen in California. Rather, the appropriate injunctive relief would see the Court prevent Defendant from using its misleading packaging to sell Infants' in California at a higher price per ounce than Children's. Whether Defendant chose to comply through pricing adjustments to one or both products, through packaging changes or both, or even by other means, would be up to Defendant. The Court need not require any specific pricing action or set any specific price.

Defendant also argues that even if it changes its pricing, "merely changing a few price stickers would do nothing to remedy" its misleading packaging.[19] That simply doesn't follow. The core of Plaintiff's complaint is that Defendant uses misleading packaging ***to sell its Infants' at a higher price per-ounce*** than Children's. There would be no complaint if Defendant sold both products in different packages for the same price per ounce. Thus, Defendant's assertion that Plaintiff "claims that the name and packaging of the Infants' product is unlawful regardless of retail selling price"[20] is simply false. Pricing changes and packaging changes are alternative responses that Defendant might choose, not cumulative responses both of which are required.

---

[19] Dkt. No. 20 (Def's Opp.), 12:17-13:6.

[20] *Id.* at 4:4-8. Defendant repeats this mischaracterization multiple times. It claims, for instance, that "Plaintiff's Complaint attacks CVS' ability to sell its Infants' product *at all* – at least by that name – because the ***medicine*** in the Infants' product (as opposed to other product features) is the same as in CVS's Children's acetaminophen product." Dkt. No. 20 (Def's Opp.), 3:13-17. This is not supported by any reasonable reading of the Complaint. It is Defendant's use of misleading packaging to sell Infants' at a significantly higher price per ounce than Children's, to which it is identical, that is the problem; not the mere fact that it is selling Infants'. Defendant devotes space in its Opposition to claiming that "the respective packages expressly disclose that the two products contain exactly the same medicine in the same concentrations," Dkt. 20 (Def's Opp.), 12:23-25, and that "the Infants' package already in express terms tells consumers that the medicine inside is word for word, active ingredient for active ingredient and concentration for concentration identical to the Children's product," *Id.* at 13:20-22. That is entirely untrue. The Infants' package makes no statement about the contents of the Children's package, *see* Dkt. 20-2 (Ex. 1 to Molengraff Decl.) (exemplar package of Infants'), and it would take an extraordinarily patient, unhurried, and untrusting person to compare the two packages side-by-side to determine that, despite their outward appearances, the two packages contain the same medicine. *Compare id.* and Dkt. 20-3 (Ex. 2 to Molengraff Decl.) (exemplar package of Children's). Indeed, the fact that Defendant so frequently discusses Infants' ***in the context of Children's*** shows that it understands full well that Plaintiff does not, in fact, object to the packaging and pricing of
*(Cont'd)*

Even if the Court were to ignore the simple pricing adjustments that Defendant could make to comply with any injunctive relief, the Court is not required to accept Defendant's self-imposed restrictions on how it would address its misleading packaging. For example, Defendant has offered no evidence or logic to support its made-up requirements that any changes to its packaging – or its pricing, for that matter – must apply nationwide. Not surprisingly, both of these purported requirements come with needlessly expensive consequences:

- Defendant offers no evidence to support its claim that it would have to remove all stock of Infants' from its stores nationwide. Even if Defendant had to remove stock from certain stores, why could it not just remove stock from California stores and sell it elsewhere? If the stock was worth shipping to California in the first place, surely it is worth shipping to sell elsewhere.

- Similarly, Defendant offers no evidence for its claim that it must destroy all stock on hand at its distribution centers nationwide. Even if it had to remove stock from certain distribution centers that supplied California stores, why could it not just redirect that stock to stores located outside California?

- Defendant also offers no evidence to support its claim that it necessarily must lose 26 weeks of sales **nationwide.** Even if Defendant could not continue selling Infants' in California for 26 weeks, it offers no evidence to explain why this cessation in sales must be **nationwide**. It is Defendant's product sold in Defendant's stores. Defendant has offered no evidence to explain why it cannot simply choose to use packaging in California that differs from what it uses in other states. Even if it truly exists, an internal company rule is not a legal requirement that necessarily must cause Defendant to incur costs. Moreover, even if Defendant had to use the same packaging in all states, why could it not keep selling Infants' in the old packaging in all states but California for the 26 weeks it supposedly takes to develop new packaging?

---

Infants' in isolation, but that it is Defendant's use of misleadingly distinct packaging *to sell the two products at different prices per ounce* that is at issue.

- Further, Defendant offers no evidence to support its claim that it must ask the manufacturer of its Infants' product to destroy 90 days of stock that it has produced. Why can that stock not simply be sold in stores located outside California?

Defendant has not offered and cannot offer proof of any of the purported costs described above. Defendant might incur some costs in moving inventory to neighboring states and removing stock from California stores for sale in other states. But those costs would be far less than the cost of total destruction of the product that was the basis for Defendant's calculations.

Defendant has provided no evidence that would permit the Court to estimate those costs. In reality, we do not think that CVS actually would take any of the measures it stacks on top of one another to exaggerate the costs it supposedly faces. More importantly, it has presented not one shred of evidence to explain why it would be required to take such extensive and expensive measures when much less costly (and sensible) measures are readily available.

Further, Plaintiff makes no nationwide claims. There is no basis upon which the Court could order a nationwide remedy or order Defendant to take action nationwide. Thus, all of the measures that Defendant claims it must take on a nationwide basis are a result of its self-imposed limitations on its ability to comply with California-specific injunctive relief. Because Defendant has not offered any evidence as to the basis for those purported limitations, we suggest that the Court should not accept them as settled facts. Defendant is correct to note that it can "'rel[y] on a reasonable chain of logic' based on the allegations of the complaint."[21] But nothing about Defendant's tortured chain of purported logic is "reasonable." Its melodramatic threatened acts of self-destructive behavior cannot be a legitimate basis for federal jurisdiction.

Finally, even if Defendant had been correct in its arguments regarding the consequences of injunctive relief and had proven so with real and sufficient evidence, some of the figures it gives are ludicrously inflated because they equate the cost of compliance with a loss in gross revenue rather than a decrease in gross profit. As part of its grossly inflated figures, for example, Defendant assumes a loss in nationwide sales of $1,691,276.[22] But this ignores the costs that

---

[21] Dkt. No. 20 (Def's Opp.), 7:14-22 (citations omitted).
[22] Dkt. 20-1 (Molengraff Decl.), ¶ 10.

Defendant would incur in making those sales – *e.g.*, costs of goods sold, sales costs, distribution and logistics costs, and taxes, to name a few. Assuming a net post-tax profit margin of 10%, for example, this would reduce Defendant's grossly inflated estimate of the cost of injunctive relief by $1,522,148.40 (90% of 1,691,276.), from $3,888,363.00 down to $2,366,214.60.[23]

Defendant's claims are exaggerated and without factual or logical basis. Defendant has not established that Defendant's cost of injunctive relief – which can be as simple as repricing Infants', Children's, or both – comes anywhere near a sum that would bring the amount in controversy up to the $5,000,000 threshold. Even if Defendant had to modify its packaging and not just its per-ounce price discrepancy, the Court should find that Defendant has not established that it needs to take any such measures on a nationwide basis and that the limited evidence Defendant has provided about its California operations is not sufficient to establish Defendant's cost of complying with California-only injunctive relief.[24] Moreover, even if the Court were to consider Defendant's unrealistic nationwide consequences of injunctive relief, Defendant has not provided evidence from which the Court reasonably can place a dollar value on those purported consequences – except that it seems clear that the real amounts involved are considerably lower than those proposed by Defendant.

---

[23] Even if Defendant were right that it necessarily must lose sales – which seems highly unlikely if it stops overcharging for its product – Defendant has provided no evidence from which the Court can determine an appropriate net profit margin to apply to its sales. Accordingly, even if it were not a grossly overinflated amount that should be rejected out of hand, Defendant has failed to meet its burden to provide the information necessary for the Court to accept the lost-sales portion of its estimated cost of injunctive relief. Reducing $3,888,363 to $2,366,214.60 leaves $5,000,000 far away.

[24] With respect to the latter, one estimate of the gross revenue of 26 weeks of sales of Infants' in California is $245,809.20. That is derived from Defendant's assertions that the total sales in California from 2016 through August 15, 2020 (1,688 days) totaled $2,275,251 ($1,347.90 per day) and that the total online sales shipped to California from 2017 through August 20, 2020 (1,322 days) totaled $3,547.44 ($2.70 per day). ($1347.90 + $2.70) x 26 x 7 = $245,809.20. This is not, however, a fair estimate of the costs Defendant would incur if it had to cease sales in California for 26 weeks because it is gross revenue rather than net profit and, therefore, it overstates Defendant's net cost of losing 26 weeks of sales.

### C. Defendant cannot rely on a crude estimate of attorney's fees as 25% of restitution.

To estimate attorneys' fees, Defendant multiplies its transparently-inflated estimate of restitution by 25%, asserting that "courts commonly apply 25% of the common fund as a reasonable estimate of fees."[25] But in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, the Ninth Circuit explicitly rejected just such an approach, noting that:

> As we have already explained, the defendant *must prove* the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation.[26]

Thus, for the Court to include an estimate of attorneys' fees in its calculation of the amount in controversy for CAFA jurisdiction purposes, Defendant must have provided evidence sufficient to establish an amount of attorneys' fees by a preponderance of the evidence.[27] To this end, Defendant has noted hourly rates sought by Plaintiff's attorneys in other cases.[28] But a rate alone is not a fee. Defendant has not offered any evidence to support an estimate of the hours likely to be worked by Plaintiff's attorneys. Thus, there is no basis upon which the Court can generate or accept an estimate of the amount of attorneys' fees likely to be sought by Plaintiff should she prevail in this case.[29]

### D. The total amount in controversy for purposes of determining whether CAFA diversity jurisdiction exists is far less than $5,000,000.

Defendant has not provided evidence from which the Court can derive the correct amounts to include in its calculation. Thus, it is not possible to determine with any accuracy the amount in controversy for the purposes of establishing CAFA diversity jurisdiction. One can say with confidence, however, that it is considerably lower than $5,000,000.

---

[25] Dkt. No. 20 (Defendant's Opposition to Motion for Remand ("Def's Opp.")), at 11:11-15.
[26] 899 F.3d 785, 796 (9th Cir. 2018)(emphasis added).
[27] Id.
[28] Dkt. No. 20 (Def's Opp.), at 8:18-9:7.
[29] Impermissibly seeking to shift its burden, Defendant complains that "Plaintiff herself has not provided any evidence of what her attorneys' fees might be." Dkt. No. 20 (Def's Opp.), at 8:18-19. That is not Plaintiff's burden. Plaintiff is not responsible for filling in evidentiary gaps in Defendant's papers.

As described above, a reasonable estimate for restitution is $1,367,279.06.[30] Because Defendant has not met its burden to establish a reasonable estimate of attorneys' fees by a preponderance of the evidence, no figure for attorneys' fees should be used in calculating the amount in controversy. Even if we use Defendant's crude measure of 25% of restitution, which the Ninth Circuit has expressly forbidden, we generate a figure of $341,819.77. Adding those two figures together, we would arrive at $1,709,098.83. That means that the cost of injunctive of relief would have to be at least $3,290,901.17.

Defendant estimates the cost of injunctive relief at $3,888,363.[31] But based on the paucity of real information provided, a fair estimate of Defendant's cost of injunctive relief is impossible to determine. As discussed above, that cost should be the impact that bringing the per-ounce prices of Infants' and Children's into parity in California would have *on net profits*. Defendant has provided no evidence from which the Court can generate an estimate of that net impact, but one can state with confidence that it would be far less than the $3,290,901.17[32] that Defendant would need to bring the total amount in controversy up to $5,000,000. Even if the Court were to accept Defendant's argument that it must modify its packaging, but still reject Defendant's unsupported claim that any actions it takes in California must be taken nationwide, a figure to consider when trying to estimate the cost of injunctive relief would be the $245,809.20 in net revenue that Defendant would lose if it ceased sales in California for 26 weeks. And even that overstates Defendant's cost of injunctive relief in multiple ways, not the least of which is that it is a gross-revenue figure rather than a lost net-profit figure. Still, it is elucidating in showing that, no matter how Defendant strains and stretches, the cost of injunctive relief simply cannot be enough to take Defendant past the $5,000,000 threshold.

### III. DEFENDANT HAS NOT MET ITS HEAVY BURDEN TO PROVE AN AMOUNT IN CONTROVERSY SUFFICIENT TO ESTABLISH DIVERSITY JURISDICTION UNDER 28 U.S.C. §§ 1332(A) AND 1441(B)

Defendant apparently has dropped its assertion in its notice of removal that the entire cost

---

[30] And even that is an overstatement. $1,289,040.17 is likely more accurate. *See* fn. 16.
[31] Dkt. 20-1 (Def's Opp.), 14:1-2.
[32] A generous calculation of the cost of injunctive relief adds up to $2,366,214.60; a number still far short of what Defendant needs to get to $5,000,000. *See* p. 11, above.

1  of compliance with injunctive relief should be considered in calculating the amount in
2  controversy under 28 U.S.C. §§ 1332(a) and 1441(b).[33]  That is understandable because in a
3  putative class action, the total cost of injunctive relief or of the total amount of restitution
4  potentially recoverable cannot be allocated 100% to the class representative and used to satisfy
5  the $75,000 jurisdictional requirement.[34]

6  Defendant's argument that the $75,000 threshold for diversity jurisdiction is met relies
7  entirely, then, on its assertion that Plaintiff's attorney's fees will be more than $75,000.  Courts
8  have held, however, that there is no principled reason to treat attorneys' fees differently from
9  injunctive relief for purposes of determining the amount in controversy.[35]  Accordingly, just as
10 for injunctive relief and for restitution, attorneys' fees cannot be aggregated in order to meet the
11 $75,000 threshold.  Thus, the proper measure of Plaintiff's attorneys' fees because there is a
12 putative class, even though Plaintiff has an individual CLRA claim, is an estimate of attorneys'
13 fees for the putative class divided by the number of class members.[36]

14 The mathematical power of the denominator is such that even if total attorney's fees were

---

[33] *See* Dkt. No. 4, (Notice of Removal), ¶ 34.  Defendant does not press this argument in its opposition.

[34] *See Zahn v. International Paper Co.*, 414 U.S. 291, 300 (1973); *see also Snyder v. Harris*, 394 U.S. 332, 335 (1969), holding that the class members' claims can be aggregated to meet the jurisdictional amount requirement only when they "unite to enforce a single title or right in which they have a common and undivided interest" (emphasis added); *McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S.D.) N.A.)*, 264 F.3d 952, 955 (9th Cir. 2001), holding that, in a class action where the plaintiffs alleged that the defendants misrepresented or withheld information about the nature and duration of a rebate program and wrongfully discontinued it, the claims arising out of the termination of the rebate program do not implicate a "single indivisible res," and could be adjudicated on an individual basis because the consolidated plaintiffs (and putative class members) have no common and undivided interest in accruing rebates under the program because each plaintiff charged purchases and accrued rebates individually and not as part of a group.

[35] *See Doe v. Aetna, Inc.*, 2018 U.S. Dist LEXIS 57771, *22 (N.D. Cal., Apr. 4, 2018) (*citing Boston Reed Co. v. Pitney Bowes, Inc.*, 2002 U.S. Dist. LEXIS 11683, *19-20 (N.D. Cal., June 20, 2002) ("'defendants must show that each plaintiff's pro-rata share of awarded restitution, disgorgement, attorney's fees, punitive damages and injunctive relief satisfies the amount in controversy requirement.'" (quoting *Phipps v. Praxair, Inc.*, 1999 U.S. Dist. LEXIS 18745, *12 (S.D. Cal., Nov. 12, 1999))).

[36] *Phipps*, 1999 U.S. Dist. LEXIS 18745, *12; *Doe v. Aetna, Inc.*, 2018 U.S. Dist LEXIS 57771, *23-24 (attributing a pro rata share of total class attorney's fees to plaintiff); *see also Madison v. U.S. Bancorp*, 2015 U.S. Dist. LEXIS 9361, *10-11 (N.D. Cal., Jan. 27, 2015).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

going to be $1,000,000 and the class had only 10,000 purchasers, the pro rata share of attorney's fees attributable to Plaintiff would be only $100. Indeed, even if there were only 100 class members, the pro rata share of $1,000,000 of attorney's fees attributable to Plaintiff still would be only $10,000 – nowhere near enough to get Defendant materially closer to the $75,000 figure. Moreover, as discussed above, Defendant has offered no evidence regarding the number of hours it reasonably estimates that Plaintiff's attorneys will spend working on this case. Thus, there is no support for any kind of estimate of attorneys' fees that could ever be sufficient to leave Plaintiff with a pro rata share of fees sufficient for the $75,000 threshold to be met.

Defendant argues, contrary to the applicable authorities, that the question for the Court is whether it is more likely than not that Plaintiff's final request for fees under the CLRA for Plaintiff's individual claims if taken through trial would be more than $75,000. But that hugely speculative and hypothetical inquiry is not the relevant question. If it were, the $75,000 threshold would be met in almost every case.

Thus, as stated above, the relevant question is ***whether Plaintiff's pro rata share*** of the class's fees will meet the $75,000 standard. It will not. Defendant has offered no evidence to suggest it will. Moreover, even if the Court were to ignore relevant authorities and focus solely on Plaintiff's individual claim and, in effect, pretend that the case is purely an individual case, it should not ignore reality and assume that Plaintiff would incur attorney's fees of $74,925 to pursue a $75 claim. Indeed, the Ninth Circuit has recognized that courts may determine that a "fee estimate" is too speculative because of the likelihood of a prompt settlement."[37] In this case, were there no class claims, Plaintiff would not pursue her ≤ $75 individual claim to trial. Defendant's calculation of attorneys' fees on the basis that she would is unreasonable.

## V.   CONCLUSION

Defendant has not met its heavy burden to establish that removal was proper. Plaintiff's motion should be granted and this action should be remanded.

---

[37] *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d at 795.

|   |   |
|---|---|
| Dated:  August 27, 2020 | Respectfully submitted,<br><br>**KELLER GROVER LLP**<br><br>By: /s/ *Eric A. Grover*<br>ERIC A. GROVER<br>RACHAEL G. JUNG<br>*Attorneys for Plaintiff* |