UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DANIELLE LOKEY,<br><br>    Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>    Defendant. | Case No. 20-cv-04782-LB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**<br><br>Re: ECF No. 18 |

## INTRODUCTION

In this putative class action, plaintiff Danielle Lokey challenges defendant CVS Pharmacy's sale of its CVS-branded infant pain-and-fever medicine at a higher price than its CVS-branded child pain-and fever medicine, even though the ingredients in the two products are the same, in violation of California consumer-protection laws.[1] CVS removed the case to federal court, asserting diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), and as to the named plaintiff under 28 U.S.C. § 1441(b).[2] The plaintiff moved to remand on the ground that CVS did not establish the jurisdictional amount in controversy under

---

[1] Compl. – ECF No. 4-1 at 3 (¶¶ 1–3). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 4.

ORDER – No. 20-cv-04782-LB

CAFA and for the individual plaintiff.[3] The court denies the motion because CVS established the amount in controversy.

## STATEMENT

### 1. The Notice of Removal and the Complaint

CVS is a Rhode Island corporation that conducts business in California.[4] It markets and sells its CVS-branded products in its stores and online — including liquid-acetaminophen pain reliever and fever reducer — under the "CVS Health" label.[5] Named plaintiff Danielle Lokey is an individual and resident of California.[6] She "had reason to purchase Defendant's Infants' liquid acetaminophen products on several occasions between April 2016 and the present and has done so."[7] She seeks to represent a class of California citizens "who purchased CVS-branded Infants' liquid acetaminophen for a non-commercial use" during the applicable time period.[8] She alleges that CVS deceived class members by marketing and selling identical liquid acetaminophen product as two unique medicines — infants' acetaminophen and children's acetaminophen — and charging a higher price (as much as two and a half times as much) for the infants' product.[9] She and other "parents, caregivers and other reasonable consumers have been misled into believing that they must purchase the far-more-expensive Infants' product for children under two," and CVS "counts on" the fact that "consumers shopping for products to be given to infants are very cautious about what products [they buy]"[10] CVS allegedly was aware that a price differential itself would be viewed by consumers as conveying "important information regarding the relative quality and

---

[3] Motion to Remand – ECF No. 18.
[4] Compl. – ECF No. 4-1 at 5 (¶ 7).
[5] *Id.* at 4 (¶ 1).
[6] *Id.* at 5 (¶ 6).
[7] *Id.* at 8 (¶ 25).
[8] *Id.* (¶ 26).
[9] *Id.* at 7–8 (¶¶ 19, 21).
[10] *Id.* at 8 (¶¶ 22–23).

safety of the two products."[11] The plaintiff and members of the putative class "would not have purchased the Infants' acetaminophen if [they] had known that the advertising and representations [about it] were false and misleading."[12]

CVS's notice of removal alleged jurisdictional facts of a proposed class of at least 100 members, CAFA minimal diversity, and an amount in controversy of more than $5 million based on restitution (grounded on sales figures of more than $2 million, attorney's fees of more than $500,000 (based on 25 percent of the common fund), and the costs of the injunction).[13]

2. **Additional Information**

In support of its opposition to the plaintiff's motion to remand, CVS submitted a declaration from Hilary Molengraff, CVS's Director of Product Development — Store Brand Healthcare, about CVS's retail sales of the product.[14] Total in-store California retail sales of CVS Infants' acetaminophen from 2016 through August 15, 2020 were $2,275,251, and total online sales shipped to California from 2017 to the "present" (the declaration is dated August 15, 2020) were $3,547.44, for total sales of $2,278,798.44.[15] CVS does not sell any acetaminophen products with state-specific packaging, meaning that "any injunctive relief affecting the packaging of the Infants' product would have effects nationwide, and not just in California[.]"[16] To comply with the plaintiff's suggested injunctive relief, CVS would "lose the value of non-compliant Infants' product that is currently in stock:" 328,052 units with a value of $375,143.[17] This is the on-hand

---

[11] *Id.* at 12 (¶ 42).

[12] *Id.* at 13 (¶ 45).

[13] Notice of Removal – ECF No. 4 at 4–5 (¶¶ 11–13), 6 (¶ 18), 8–10 (¶¶ 23–25).

[14] The court grants CVS's motion for judicial notice. Request for Judicial Notice – ECF No. 21. The plaintiff does not object. The court can consider the jurisdictional facts. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). The court also can consider the public-record documents regarding attorney's fees, costs, administration fees, and enhancement payments. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.,* 442 F.3d 741, 747 n.6 (9th Cir. 2006); *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001).

[15] Opp'n – ECF No. 20 at 9, 16; Molengraff Decl. – ECF No. 20-1 at 2 (¶ 7).

[16] Molengraff Decl. – ECF No. 20-1 at 3 (¶ 8).

[17] *Id.* (¶ 9).

stock for summer months, but the stock in the winter months would be higher because of the cold-and-flu season, which means that if CVS had to comply with injunctive relief in the winter, the value of lost stock would be higher.[18] Any injunctive relief requiring changes to the packaging of the Infants' product would take a minimum of 26 weeks to develop the new packaging, print it, and package and ship the product, and it might take longer given COVID-19 disruptions in CVS's supply chains.[19] During this timeframe, "CVS would be unable to sell the Infants' product," which, based on historical sales data, would result in lost nationwide sales of $1,691,276."[20] The costs to recall the product on hand in stores and in distribution centers would be $1,175,731.[21] The manufacturer of the product keeps a 90-day supply on hand, ready to ship, and a supply of finished labels and packaging.[22] The value of that stock is $130,975, and the cost of destruction is $384,263.[23] In total, "taking into account the fact that for CVS to comply with any potential injunctive relief affecting product packaging will affect merchandise nationwide, the cost of compliance totals at least $3,888,363.00."[24]

CVS also submitted the plaintiff's counsel's approved 2016 hourly rates in an earlier class action of $825 for Eric Grover and Scot Bernstein and $550 for Rachael Jung.[25]

### 3. Relevant Procedural History

On May 11, 2020, the plaintiff filed her complaint in state court.[26] She claims violations of California's false-advertising law (Cal. & Prof. Code §§ 17500, *et seq*.), unfair-competition law

---

[18] *Id.*

[19] *Id.* (¶ 10).

[20] *Id.*

[21] *Id.* (¶ 11).

[22] *Id.* (¶ 12).

[23] *Id.*

[24] *Id.* (¶13).

[25] Opp'n – ECF No. 20 at 7, 13; Grover Decl., Ex. A to CVS's Request for Judicial Notice – ECF No. 21–1 at 17 (¶ 44); Bernstein Decl., Ex B to *id.* – ECF No. 21-2 at 4 (¶ 11).

[26] Compl. – ECF No. 4-1.

(Cal. Bus. & Prof. Code §§ 17200 *et seq*.), and Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq*.).[27] The remedies in the Prayer for Relief include the following: (1) "[a]n order enjoining Defendant from engaging in the acts and practice complained of in this complaint;" (2) "[d]isgorgement of profits and restitution and restoration of all costs incurred, sums of property unlawfully withheld, and losses caused by the acts and practices that violated [the] California Business & Professions Code;" (3) "[e]quitable relief arising from the acts and practices that violate California Civil Code § 1770;" (4) payment of costs of the suit; (5) payment of statutory attorney's fees and costs; (6) "an award of pre-and post-judgment interest to the extent allowed by the law;" and (7) "[s]uch other or further relief as the Court may deem proper."[28] The complaint does not mention an amount in controversy.[29]

On July 16, 2020, CVS timely removed the lawsuit (within 30 days of service) to federal court, alleging diversity jurisdiction under CAFA because the amount in controversy exceeds $5 million and for the plaintiff individually because the amount in controversy exceeds $75,000.[30] 28 U.S.C. §§ 1332(d), 1446(b)(1). The plaintiff moved to remand on the ground that CVS did not establish the amount in controversy, either under CAFA or for the plaintiff individually.[31] CVS opposed the motion and submitted declarations about the amount in controversy.[32] The plaintiff replied but did not submit any additional jurisdictional facts.[33] The court held a hearing on August 17, 2020.

## LEGAL STANDARDS

Under 28 U.S.C. § 1441(a), a defendant may remove a case to federal court if the plaintiff could have filed the case here, meaning, if the court has federal question or diversity jurisdiction.

---

[27] *Id* at 11–17 (¶¶ 38–74).
[28] *Id.* at 18.
[29] *Id.*
[30] Notice of Removal – ECF No. 4 at 2–3 (¶¶ 1–2), 4 (¶ 9).
[31] Mot. – ECF No. 18.
[32] Opp'n – ECF No. 20; Molengraff Decl. – ECF No. 20-1; Request for Judicial Notice – ECF No. 21.
[33] Reply – ECF No. 22.

*Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). Because district courts are courts of limited jurisdiction, courts construe the removal statute strictly and reject federal jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). The removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

### 1. Diversity Jurisdiction

For diversity jurisdiction generally, the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs," and there must be complete diversity of citizenship between opposing parties. 28 U.S.C. § 1332(a)(1). "The amount in controversy includes claims for general and special damages (excluding costs and interest), attorney[']s fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *J. Marymount, Inc. v. Bayer Healthcare*, LLC, No. C 09-03110 JSW, 2009 WL 4150126, at *4 (N.D. Cal. Nov. 30, 2009) (quotation omitted).

Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (cleaned up). The court resolves all ambiguities in favor of remand. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

### 2. CAFA Jurisdiction

Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, (2) the class contains 100 or more putative class members, and (3) there is at least minimal diversity between the parties. 28 U.S.C. § 1332(d). The $5-million jurisdictional minimum may be based on aggregation of the claims of all potential class members. *Id.*

A defendant's notice of removal under CAFA need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and not evidentiary submissions. *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Evidentiary submissions are not required unless the plaintiff contests, or the court questions, the defendant's allegations. *Dart Cherokee*, 574 U.S. 81 at 89. If the plaintiff contests, and the complaint does not include a facially apparent amount in controversy, "both sides submit proof," and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Chin v. Cole Haan, LLC*, No. 16-cv-02154-JD, 2016 WL 7211841, at *1 (N.D. Cal. Dec. 13, 2016) (quoting *LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)); *see Ibarra*, 775 F.3d 1193, 1199.

When removal is based on CAFA jurisdiction, there is "no antiremoval presumption." *Dart Cherokee*, 574 U.S. at 89. But the removing party bears the burden of proving that jurisdiction is proper and "persuad[ing] the court that the estimate of damages in controversy is a reasonable one." *Chin*, 2016 WL 7211841, at *1 (quoting *Ibarra*, 775 F.3d at 1197). CAFA's requirements are tested by "real evidence" under procedures entrusted to the district court's discretion. *Ibarra*, 775 F.3d at 1198–1200. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id* at 1197 (cleaned up). The procedural minimum is that both parties should have "a fair opportunity to submit proof." *Id* at 1200.

## ANALYSIS

The parties agree that they are diverse, and the issue thus is whether the amount in controversy is satisfied, either (1) under CAFA, in an amount that exceeds $5 million, or (2) for the individual plaintiff, in an amount that exceeds $75,000. CVS met its burden under both theories.

### 1. CAFA Jurisdiction

The plaintiff's complaint is silent about the amount of damages. CVS submitted evidence about total retail sales (and thus restitution) of at least $2,278,798.44, attorney's fees of $569,699.61 (25 percent of the common fund for the four-year period), and injunction costs of $3,888,363, for a total amount in controversy of $6,679,506.05. The plaintiff challenges the numbers as inflated, not her theory of recovery, and insufficient. The court holds that CVS sufficiently established the CAFA amount in controversy.

#### 1.1 Restitution

To support its inclusion of restitution in the amount-in-controversy calculation, CVS identifies the plaintiff's theory of recovery in the complaint, which includes restitution, and her allegation that had she known that the infants' medicine was the same as the children's medicine, she would not have purchased the more expensive infants' medicine.[34] It reads these together and concludes that plausibly, the complaint demands a full refund.[35] The plaintiff counters that (1) the total sales fund is not her theory of recovery (and CVS's numbers in any event appear inflated because they include all of 2016 and instead should begin on April 6, 2016), and (2) she does not seek a full refund and seeks only a refund of the overcharge, which is $1,366,679.06 (60 percent of CVS's sales numbers).[36] (The plaintiff initially had a slightly lower calculation of $1,200,000.[37])

The complaint plausibly alleges restitution, and a resulting full refund, as a theory of recovery. CVS provided "real evidence," in the form of a declaration by a CVS corporate officer, supporting its sales figures. *Watkins v. Vital Pharm., Inc.*, 720 F.3d 1179, 1181 (9th Cir. 2013) (undisputed declaration of sales of the disputed product was sufficient to establish the CAFA amount in controversy); *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (declarations about hours worked and the resulting recovery to the plaintiffs if they prevailed established the

---

[34] Opp'n – ECF No. 20 at 15 (citing Compl. – ECF No. 4-1 at 14–15 (¶¶ 51, 56)).

[35] *Id.*

[36] Reply – ECF No. 22 at 9–10 & n.15–16 (class period starts April 6, 2016, four years before the tolling date in Emergency Rule 9 of the California Rules of Court) (citing *Yumal v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010)).

[37] Mot. – ECF No. 18 at 16.

amount in controversy). An attack on jurisdictional allegations in a declaration must be "factual" and not "facial" — the plaintiff must "challenge[] the truth of [defendant's] plausible allegations." *Salter v. Quality Carriers, Inc.*, --- F.3d ---, No. 20-55709, 2020 WL 5361459, at *3 (9th Cir. Sept. 8, 2020) (dismissing the plaintiff's argument that the defendant's declaration (to support the amount in controversy in a CAFA matter) contained unsupported and conclusory statements). The plaintiff's conclusory challenge to the declaration's sufficiency is not a tendering of "declarations, affidavits, expert reports, or other 'real evidence'" to counter CVS's submission. *Sharpe v. Puritan's Pride, Inc.*, No. 3:16-cv-06717-JD, 2017 WL 475662, at *2 (N.D. Cal. Feb. 6, 2017) (quoting *Ibarra*, 775 F.3d at 1198).[38] And even with the plaintiff's discount, the amount in controversy (when considering the costs of injunctive relief) is met.

**1.2   Attorney's Fees**

The parties agree that attorney's fees are included in the assessment of the amount in controversy. Citing *Fritsch v. Swift Transportation Company*, the plaintiff disputes CVS's use of the ordinary 25-percent-of-the-common-fund benchmark on the ground that CVS must prove attorney's fees, not estimate them, and point to a statute that authorizes fees.[39] 899 F.3d 785, 796 (9th Cir. 2018). The Consumer Legal Remedies Act provides for the recovery of prevailing-party attorney's fees. Cal. Civ. Code § 1780(e). The issue is the sufficiency of the 25-percent

---

[38] Citing *McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S. Dakota), N.A.)*, the plaintiff argued in her motion that the class claims could not be aggregated to establish the amount in controversy for restitution, attorney's fees, or injunctive relief. Mot. – ECF No. 18 at 20 & n.74, 23 & n.88, 26 & n.96 (citing *McCauley*, 264 F.3d 952, 955, 958, 961 (9th Cir. 2001). In its opposition, CVS contended that *McCauley* predates CAFA (and individual claims could not be aggregated at the time or injunctive relief considered in assessing the amount in controversy), but CAFA now allows the value of claims to be aggregated and injunctive relief to be included in assessing the amount in controversy. Opp'n – ECF No. 20 at 15–17 (citing 28 U.S.C. § 1332, *McCauley*, 264 F.2d at 958, and collecting cases). In her reply, the plaintiff no longer argues that the amounts cannot be aggregated or injunctive relief considered. Reply – ECF No. 22 at 18 n.34 (citing *McCauley*, 264 F.2d at 955, only to support the contention that the total cost of injunctive relief or the total potential restitution recoverable cannot be allocated to the plaintiff and used to satisfy the more-than-$75,000 jurisdictional threshold under 28 U.S.C. § 1332(a)(1)). In any event, CAFA allows courts to aggregate the value of the claims, and that aggregation rule applies to the value of the injunctive relief. *Bayol v. Zipcar, Inc.*, No. 14-cv-02483-TEH, 2015 WL 4931756, at *10 (N.D. Cal. Aug. 18, 2015).

[39] Mot. – ECF No. 18 at 16–17; Reply – ECF No. 22 at 16 (citing *Fritsch v. Swift Transp. Co.*, 899 F.3d 785, 796 (9th Cir. 2018)).

ORDER – No. 20-cv-04782-LB                 9

benchmark attorney's fees, which CVS calculates as $569,699.61.[40] CVS did not calculate the hours that the attorneys might expend in this case (except to say that the $75,000 amount in controversy for the individual plaintiff will be met (assuming the lowest billing rate) in the 137th hour of work, something that the case necessarily will require).[41] The declarations establishing the billing rates show 410 hours in the earlier class action, resulting in a lodestar of $265,845 (with an additional 50 hours expected) in a class-action settlement in a case with relatively modest work (as opposed to litigating class certification and summary judgment, for example). The case involved only investigating the case, written discovery, review of 2,000 documents, case-management conferences, mediation, and working on the settlement, including the approval and fees motions.[42]

That said, as the plaintiffs contend, in *Fritsch v. Swift Transportation Company*, the Ninth Circuit rejected the defendant's argument that the court should hold, as a matter of law, that attorney's fees in class actions are 25 percent of all alleged recovery. 899 F.3d at 796. "Such a per se equitable rule is inapplicable in this context" because "the defendant must prove the amount of attorneys' fees at stake by a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Id.* "The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence," "with summary-judgment-type evidence." *Id.* at 788, 795; *Arias v. Residential Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019).

CVS put in some evidence, unrefuted by the plaintiff, about hours likely to be worked, but that evidence did not support the full 25-percent benchmark, which thus is only an estimate. Even so, the amount in controversy still exceeds $5 million, considering the costs of the injunctive relief.

**1.3   Injunctive Relief**

The plaintiff challenges CVS's calculation of its costs of injunctive relief as inflated, in part because it could avoid price premiums (and avoid labeling changes) by reducing the price for the

---

[40] Opp'n – ECF No. 20 at 16.

[41] *Id.* at 14.

[42] Grover Decl., Ex. A to Request for Judicial Notice – ECF No. 21-1 at 15–16 (¶¶ 42–43).

ORDER – No. 20-cv-04782-LB         10

infants' product or adjusting prices for both products, and it can keep costs low by changing pricing stickers.[43] She challenges CVS's failure to offer evidence about the price elasticity of the infants' product or the competitive dynamics of the marketplace.[44] It does not need to destroy its stock and instead can use different labels only for products sold in California.[45]

Courts consider the plaintiff's viewpoint on the cost of injunctive relief: "It is proper under CAFA to consider the defendant's cost of compliance with an injunction just as it is proper to consider the plaintiff's benefit from the injunction." *Guerard v. CNA Fin. Corp.,* No. C 09-01801 SBA, 2009 WL 10710608, at *3 (N.D. Cal. July 31, 2009) (citing *Tompkins v. Basic Research LLC*, No 08–cv–244 LHK, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008)). Under this "either viewpoint" rule, "whichever party stands to gain or lose a greater amount is the one whose viewpoint is taken into account for jurisdictional purposes." *Tompkins*, 2008 WL 1808316, at *4 (quoting *McCauley v. Ford Motor Co. (In re Ford Motor Co./Citibank (S. Dakota), N.A.),* 264 F.3d 952, 958 (9th Cir. 2001)).

Here, CVS provided a declaration by its corporate office establishing the costs of injunctive relief of at least $3,888,363.[46] To counter the plaintiff's suggested approach (unsupported by any declarations or cost estimates) — changing prices, swapping price tags, and the like — CVS counters that swapping out price tags does not address the plaintiff's challenge to the label or the remedy she seeks, and that it would need to "overhaul[ the infants' product] in some way."[47] That overhaul entails removing the product from shelves and warehouses, destroying existing inventory, developing new packaging, replenishing the inventory, and changing the product's marketing and advertising scheme.[48] Also, the complaint did not limit the injunctive relief to the

---

[43] Reply – ECF No. 22 at 11–12.

[44] *Id.* at 11.

[45] *Id.* at 13.

[46] Molengraff Decl. – ECF No. 20-1 at 4 (¶ 13).

[47] Opp'n – ECF No. 20 at 18.

[48] Molengraff Decl. – ECF No. 20-1 at 3 (¶¶ 8–12).

approach that the plaintiff suggests now.[49] Furthermore, in addition to not addressing the costs that attend the injunctive relief, the plaintiff does not dispute CVS's calculation of its costs and contends only that CVS's approach is unnecessary. Because CVS provided evidence to support the costs of the injunctive relief that the complaint plausibly seeks, and the plaintiff did not counter that evidence sufficiently, CVS established that it stands to lose a "greater amount," and thus the court considers its viewpoint for jurisdictional purposes. *McCauley*, 264 F.3d at 958. Its submissions are sufficient jurisdictionally to establish the amount in controversy.

\* \* \*

In sum, CVS establishes that the CAFA amount in controversy exceeds $5 million.

"The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In that sense, the amount in controversy reflects the maximum recovery the plaintiff reasonably could recover. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be "less than the requisite . . . amount." *Arias*, 936 F.3d at 927; *see also Fire Ins. Co. v. Knowles,* 568 U.S. 588, 596 (2013) (plaintiffs may not avoid removal to federal court under CAFA's $5 million amount-in-controversy requirement by expressly alleging that damages fall below that sum). The plaintiff cannot limit her damages and thereby bind the class, especially given that the complaint was silent about the amount in controversy. *Knowles,* 568 U.S. at 596. CVS met its burden of proving that jurisdiction is proper and "persuad[ing] the court that the estimate of damages in controversy is a reasonable one." *Chin*, 2016 WL 7211841, at \*1; *see Ibarra*, 775 F.3d at 1197.

---

[49] Compl. – ECF No. 4-1 at 13 (¶ 47), 15 (¶ 58), 17 (¶ 72), 18.

**2. Diversity Jurisdiction for the Named Plaintiff**

The parties do not dispute that the plaintiff's damages do not exceed $75,000.[50] CVS does not predicate its argument on the costs of injunctive relief and instead contends only that the plaintiff's attorney's fees necessarily will exceed $75,000.[51] The parties do not dispute that because the Consumer Legal Remedies Act provides for attorney's fees to the prevailing party, those fees are included in the assessment of the amount in controversy.[52] *Arias,* 936 F.3d at 922 (citing *Fritsch,* 899 F.3d at 794). As discussed above, CVS must show by a preponderance of the evidence that the future attorney's fees likely to be incurred will exceed $75,000. *Fritsch*, F.3d at 795.

> [D]istrict courts have developed expertise in determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate when awarding attorneys' fees under a statute or contract authorizing recovery of reasonable attorneys' fees at the close of litigation. In estimating future attorneys' fees, district courts may likewise rely on their own knowledge of customary rates and their experience concerning reasonable and proper fees.

*Id.* (cleaned up). Here, CVS put in evidence about the plaintiff's counsels' 2016 billing rates and its assessment — grounded in part in work in another case — that even assuming the lowest hourly rate, the $75,000 threshold will be met in the 137th hour of work, hours that the case necessarily will require.[53] Based on the court's knowledge of customary rates and the reasonable amount of time it takes to litigate a case, the amount in controversy is met here. The plaintiff did not meaningfully counter this assessment.

---

[50] Not. of Removal – ECF No. 4 at 12 ("[I]t is unlikely that Plaintiff alone purchased sufficient CVS branded infants' liquid acetaminophen to reach the $75,000 jurisdictional threshold[.]"); Mot. – ECF No. 18 at 8 ("Plaintiff's potential individual recovery is well less than a thousandth of the $75,000 threshold[.]") (emphasis omitted).

[51] *See generally* Opp'n – ECF No. 20.

[52] *Id.* at 14; Reply – ECF No. 22 at 19.

[53] Opp'n – ECF No. 20 at 14.

## CONCLUSION

The court denies the plaintiff's motion to remand the case to state court. This disposes of ECF No. 18.

**IT IS SO ORDERED.**

Dated: September 17, 2020

LAUREL BEELER
United States Magistrate Judge