UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DANIELLE LOKEY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CVS PHARMACY, INC.,<br><br>　　　　　Defendant. | Case No. 20-cv-04782-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF Nos. 10, 26 |

# INTRODUCTION

In this putative class action, plaintiff Danielle Lokey challenges defendant CVS Pharmacy's marketing of its CVS-branded infant pain-and-fever medicine at a higher price than its CVS-branded child pain-and fever medicine, even though the ingredients in the two products are the same.[1] The plaintiff claims that this practice violates three California consumer-protection laws: (1) California's False Advertising Law ("FAL"), Cal. & Prof. Code § 17500; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–08; and (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–84.[2] CVS moved to dismiss the claims on the grounds that (1) the plaintiff's claims — predicated on the contention that

---

[1] Compl. – ECF No. 4-1 at 3 (¶¶ 1–3). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 11–17 (¶¶ 38–74).

ORDER – No. 20-cv-04782-LB

1  identical medicines must sell at the same price (regardless of any differences in packaging, size, or
2  product attributes) — challenge CVS's pricing decisions, which are not justiciable, and (2) the two
3  products' packaging and side-by-side positions on the retail shelf do not plausibly establish under
4  California's consumer-protection statutes that a reasonable consumer is likely to be deceived.[3] The
5  plaintiff counters that it is the defendants' misrepresentations on the packaging that deceive
6  consumers, resulting in their buying the more expensive infant product.[4] Because the labels would
7  not deceive a reasonable consumer, the court grants the motion to dismiss.

**STATEMENT**

CVS markets and sells its CVS-branded products in its stores and online — including an infants' liquid acetaminophen and a children's liquid acetaminophen — under the "CVS Health" label.[5] Named plaintiff Danielle Lokey bought the infants' acetaminophen on several occasions "between April 2016 and the present. . . ."[6] The products are identical compositionally, but CVS charges a higher price (as much as two and a half times) for the infants' product.[7]

The front labels for the two products describe their composition identically (including their concentrations of 160 mg/5 mL) but brand them for infants (with a syringe for administering the dosage and with no representation about infant age) and children (with a dosage cup and a representation that the product is for children from ages 2 to 11 years). (The FDA requires that liquid acetaminophen must be available for infants and children only in concentrations of 160 milligrams per 5 milliliters.[8]) The following are the images of the labels.[9]

---

[3] Mot. – ECF No. 10 at 6.

[4] Opp'n – ECF No. 30 at 7.

[5] Compl. – ECF No. 4-1 at 4 (¶ 1).

[6] *Id.* at 8 (¶ 25).

[7] *Id.* at 7–8 (¶¶ 19, 21).

[8] *Id.* at 7 (¶ 16).

[9] The court grants the unopposed request to take judicial notice of the labels pursuant to Federal Rule of Evidence 201(b) and also consider them under the incorporation-by-reference doctrine Request for Judicial Notice – ECF Nos. 11, 31; *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2015).

United States District Court
Northern District of California

 

The infants' label has the following instructions for dosages:

Dosing Chart

| Weight (lb) | Age (yr) | Dose (mL)* |
|---|---|---|
| under 24 | under 2 years | ask a doctor |
| 24–35 | 2–3 years | 5 mL |

*or as directed by a doctor

The children's label has the following instructions for dosages:

| Weight (lb) | Age (yr) | Dose (mL)* |
|---|---|---|
| under 24 | under 2 years | ask a doctor |
| 24–35 | 2–3 years | 5 mL |
| 36–47 | 4–5 years | 7.5 mL |
| 48–59 | 6–8 years | 10 mL |
| 60–71 | 9–10 years | 12.5 mL |
| 72–95 | 11 years | 15 mL |

*or as directed by a doctor

CVS's marketing of the product "deceives reasonable consumers . . . into believing that Infants' acetaminophen is specially formulated for children under two and that that customers should pay vastly more per ounce for the same medication."[10] The two products are displayed on the same shelf space in CVS's retail stores.[11] "No reasonable consumer would pay two and a half times as much per ounce and sometimes more to purchase Infants' acetaminophen over Children's acetaminophen unless he or she had been deceived into thinking that infants cannot safely take the Children's product."[12] Since at least April 2016, CVS "has engaged in the unfair, unlawful, deceptive, and fraudulent practice of marketing and selling the same product — liquid acetaminophen — as two unique medicines. As a result, . . . reasonable consumers have been misled into believing that they must purchase the far-more-expensive Infants' product for children under two."[13] CVS obscures critical facts . . . includ[ing] "that Infants' acetaminophen is not better suited for children under two and that Infants' and Children's acetaminophen are the exact same

---

[10] Compl. – ECF No. 4-1 at 4 (¶ 4).
[11] *Id.*
[12] *Id.* at 4 (¶ 5).
[13] *Id.* at 7 (¶ 19).

1  medication . . . so that [reasonable consumers] will pay two and a half times as much per ounce or
2  even more for the deceptively labeled Infants' product than they would have to pay for the
3  identical Children's product."[14] CVS "deceives . . . reasonable caregivers into believing that the
4  higher-price-per-ounce Infants' product is the only liquid acetaminophen product that safely can
5  be given to a child under two years of age."[15] CVS knows that "reasonable consumers shopping
6  for products to be given to infants are very cautious about what products — especially medicines
7  — they give to infants."[16] In its "marketing, advertising, packaging, and selling of Infants'
8  acetaminophen," CVS's statements were "false, misleading, without basis, and unreasonable."[17]
9  CVS "knew or should have known that the price differential itself would be viewed by consumers
10 as conveying important information regarding the relative quality and safety of the two
11 products."[18] The plaintiff and members of the putative class "would not have purchased Infants'
12 acetaminophen if [they] had known that the advertising and representations [about it] were false
13 and misleading."[19]

The court held a hearing on the motion to dismiss on November 19, 2020. All parties consented to magistrate-judge jurisdiction.[20]

### STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the

---

[14] *Id.* at 8 (¶¶ 20–21).
[15] *Id.* (¶ 22).
[16] *Id.* (¶ 23).
[17] *Id.* at 12 (¶ 41).
[18] *Id.*
[19] *Id.* at 13 (¶ 45).
[20] Consents – ECF Nos. 12, 14.

ORDER – No. 20-cv-04782-LB      5

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The plaintiff claims that CVS's pricing and packaging of the infants' and children's products deceive consumers, who buy the infants' formula thinking that it is the only product that can be given safely to children under the age of two, in violation of the FAL, UCL, and CLRA.[21] CVS moved to dismiss on the grounds that (1) the plaintiff's claims — predicated on the contention that identical medicines must sell at the same price (regardless of any differences in packaging, size, or product attributes) — challenge CVS's pricing decisions, which are not justiciable, and (2) the two products' packaging and side-by-side positions on the retail shelf do not plausibly establish under California's consumer-protection statutes that a reasonable consumer is likely to be deceived.[22]

---

[21] Compl. – ECF No. 4-1; Opp'n – ECF No. 30 at 7 (characterizing claims).

[22] Mot. – ECF No. 10 at 6–7.

The plaintiff counters that packaging's images are deceptive, the price differential conveyed (essentially) that the infant's product was necessary for children under the age of two, and the allegations about pricing otherwise are relevant to establish the economic injury to the plaintiff and the class.[23] The court grants the motion to dismiss.

First, a merchant's decision to charge different prices is not justiciable unless there is some other deception. *Boris v. Wal-Mart Stores*, 35 F. Supp. 3d 1163, 1171–72 (C.D. Cal. 2014), *aff'd*, 649 F. App'x 424 (9th Cir. 2016). In *Boris*, a putative class action, the plaintiffs challenged two Wal-Mart headache-relief products that had the same composition (ingredients and amounts), were branded differently (Equate Migraine with a red background and Equate Extra Strength Headache Relief with a green background), and were priced differently (the Migraine product was priced higher than the other product). *Id.* at 1166. The plaintiffs alleged that the difference in pricing conveyed that the higher-priced medicine was more effective. *Id.* at 1168. The court dismissed the FAL, UCL, CLRA claims (and similar claims under New York and New Jersey consumer-protection statutes), holding that the product background was not deceptive and the plaintiffs' challenge to the merchant's pricing decisions was not justiciable. *Id.* at 1169–70.

> Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Equate Migraine's price and red packaging violate. And the Court is aware of none. Absent some legislative enactment, price setting is ordinarily left to the business judgment of merchants. Taken to its logical conclusion, Plaintiffs' claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis. . . . To state this reality is to demonstrate that it is untenable: price regulation is a political question beyond the judiciary's authority. A question is a political question and therefore nonjusticiable when, for example, there is "a lack of judicially discoverable and manageable standards for resolving it [ ] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion . . ." *Baker v. Carr*, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). California courts have consistently described price regulation as "a question of economic policy . . . It is the Legislature's function, not ours, to determine the wisdom of economic policy. Judicial intervention in such economic issues is improper.

*Id.* at 1171–72 (cleaned up) (collecting cases).

---

[23] Opp'n – ECF No. 30 at 7–9.

ORDER – No. 20-cv-04782-LB                7

The allegations here are close to those in *Boris*. *Boris* had compositionally identical products geared to two audiences (migraine sufferers and headache sufferers) and CVS does too (infants and children suffering from pain and fever). Both cases involve claims that the higher pricing is the harm. Both involve different branding (the backgrounds in *Boris* and the images of infants and children here). This case is slightly different than *Boris*: the two audiences here suffer the same ailment (pain and fever) and the two *Boris* audiences suffered different headaches. But both cases in the end are about marketing products to entice different audiences, and both cases involve a price premium on a product marketed to one audience. Applying *Boris*, absent deception beyond the price differential, the plaintiff cannot challenge CVS's pricing decisions.

Second, the related point is that the labels here would not mislead a reasonable consumer.

Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [plaintiffs] must show that 'members of the public are likely to be deceived.'" *Id.* (cleaned up). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]" because [it] requires 'consideration and weighing of evidence from both sides.'" *Id.* at 138–39 (cleaned up) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "The California Supreme Court has recognized that these laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Id.* (cleaned up) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). "A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998).

The labels here are not deceptive. The front label shows that the medicines are compositionally the same. The products have different devices to deliver the doses (a syringe for infants and a cup for children), also displayed on the front label. The pictures (a child of indeterminate age on the infants' label and an older child on the children's label) or the dosing instructions do not plausibly suggest different formulations, given the front-label representation about the composition of the

1   medicines. In sum, nothing on the labels is deceptive, and the plaintiff's subjective belief of

2   deception fails the reasonable-consumer test. *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02450-RS,

3   2016 WL 7324990, at *2–3 (N.D. Cal. 2016) (consumer-deception claim was implausible because

4   no reasonable consumer was likely to be deceived by packaging that disclosed the net weight and

5   number of cookies per container); *Sponchiado v. Apple Inc.*, 18-CV-07533-HSG, 2019 WL

6   6117482, at *4–5 (N.D. Cal. Nov. 18, 2018) (dismissing CLRA, UCL, and FAL claims

7   challenging Apple's alleged misrepresentations about pixel resolution because disclaimer

8   language appearing 10 lines below contradicted the plaintiffs' interpretation). Because the label is

9   not deceptive, and the plaintiff's subjective interpretation fails the reasonable-consumer test, the

10  plaintiff's challenge to the differential pricing fails. *Boris*, 35 F. Supp. 3d at 1170.

11      The plaintiff, citing two out-of-district cases, argues that she nonetheless pleads plausible

12  claims: *Elkies v. Johnson & Johnson Servs*, *Inc.*, No. 17-cv-07320-GW, ECF No. 53 (C.D. Cal.

13  Feb. 22, 2018), and *Youngblood. v. CVS,* No. 2:20-cv-06251-MCS-MRW, ECF No. 31 (C.D. Cal.

14  Oct. 15, 2020). Both involve challenges to pain relievers with identical compositions that were

15  marketed to different audiences: infants and children. In *Elkies*, the products were infants' Tylenol

16  and children's Tylenol. Order, No. 17-cv-07320-GW – ECF No. 53 at 2. In *Youngblood*, the

17  products were the products at issue here. Order, No. 2:20-cv-06251-MCS-MRW, ECF No. 31 at 2.

18      *Elkies* is distinguishable: there was no express disclosure that the "medicine in the [Infant's]

19  bottle is exactly the same, and provided at the exact same concentration, as Children's[.]" *Id.* at 9.

20  In *Elkies*, then, the picture of a mother and baby ("along with the word 'Infants'" but without the

21  express disclosure that the medicine was the same) could lead a "significant portion of the general

22  consuming public" to conclude that the infants' product was "unique or specially formulated for

23  children under two." *Id.* By contrast, the front label here expressly discloses the medicine's

24  composition.

25      *Youngblood* involved the products in this case. The court concluded that the front labels —

26  which featured children of different ages — plausibly pleaded consumer deception (in the form of

27  a belief that the product was formulated for infants) in part because the label branded the products

28  for "children under two." Order, No. 2:20-cv-06251-MCS-MRW, ECF No. 31 at 7–8. In support

United States District Court
Northern District of California

1   of its conclusion, the court cited *Mullins v. Premier Nutrition Corp.* for the proposition that a

2   reasonable consumer would believe that the offending product was "specially formulated for

3   infants." *Id.* at 7 (citing *Mullins*, 178 F. Supp. 3d 867, 891 (N.D. Cal. 2016)). *Mullins* involved a

4   dietary product that claimed it promoted joint health. 179 F. Supp. 3d at 891. On summary

5   judgment, the *Mullins* court held that the plaintiff raised triable issues of fact that consumers

6   bought the product to reduce joint pain and stiffness and that the product (characterized as snake

7   oil) did not work. *Id.* at 875–76, 892. By contrast, here the plaintiff does not challenge the efficacy

8   of the product (a fact disputed in *Mullins*) and instead challenges the marketing that allegedly

9   misleads a consumer into believing that the medicine is specially formulated for children under

10  age two. That contention is contradicted by the front-label representations here that the products'

11  compositions are the same. *Mullins* does not compel the conclusion that the plaintiff pleads

12  plausible claims when the label discloses what the consumer is purchasing. "What ultimately

13  dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting: the

14  package actually discloses the fact that Plaintiff complains it omits[.]" *Dinan v. Sandisk LLC*, No.

15  18-CV-05420-BLF, 2019 WL 2327923, at *7 (N.D. Cal. May 31, 2019).

16  In sum, it is improbable "that a significant portion of the general consuming public or of

17  targeted consumers, acting reasonably in the circumstances could be misled" in their belief that the

18  Infants' product is not specifically for infants' use. *Sponchiado*, 2019 WL 6117482, at *3 (citing

19  *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). The court grants the motion

20  to dismiss all claims.

## CONCLUSION

The court grants the motion to dismiss. The plaintiff must file any amended complaint within two weeks. If she does not, the court will enter judgment in favor of the defendants.

This disposes of ECF Nos 10 and 26.

**IT IS SO ORDERED.**

Dated: November 20, 2020

LAUREL BEELER
United States Magistrate Judge