1   ERIC A. GROVER (SBN 136080)
    eagrover@kellergrover.com
2   RACHAEL G. JUNG (SBN 239323)
    rjung@kellergrover.com
3   **KELLER GROVER LLP**
    1965 Market Street
4   San Francisco, California 94103
    Telephone: (415) 543-1305
5   Facsimile: (415) 543-7861

6   SCOT BERNSTEIN (SBN 94915)
    swampadero@sbernsteinlaw.com
7   **LAW OFFICES OF SCOT D. BERNSTEIN,**
    **A PROFESSIONAL CORPORATION**
8   101 Parkshore Drive, Suite 100
    Folsom, California 95630
9   Telephone: (916) 447-0100
    Facsimile: (916) 933-5533
10
    Attorneys for Plaintiff
11  Danielle Lokey

12

13                  **UNITED STATES DISTRICT COURT**

14                 **NORTHERN DISTRICT OF CALIFORNIA**

15

16  DANIELLE LOKEY, individually and on       ) Case No: 3:20-cv-04782-LB
    behalf of a class of similarly situated    )
17  individuals,                               ) Hon, Magistrate Judge Laurel Beeler
                                               )
18                      Plaintiff,             ) <u>CLASS ACTION</u>
                                               )
19              v.                             ) **FIRST AMENDED COMPLAINT FOR**
                                               ) **DAMAGES AND INJUNCTIVE RELIEF**
20  CVS PHARMACY, INC.; and DOES 1             )
    through 50, inclusive,                     )
21                                             ) <u>**DEMAND FOR JURY TRIAL**</u>
                        Defendants.            )
22                                             )
                                               )
23  _____)

24

25

26

27

28

*Side text (vertical):* KELLER GROVER LLP — 1965 Market Street, San Francisco, CA 94103 — Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## CLASS ACTION COMPLAINT

Plaintiff Danielle Lokey ("Plaintiff"), on behalf of herself and a class of similarly situated individuals defined below, alleges on information and belief as follows:

## INTRODUCTION

1.    This class action lawsuit arises out of Defendant CVS Pharmacy, Inc.'s ("Defendant" or "CVS") use of deceptive marketing techniques, including the design of and wording on its product packaging, to obscure critical facts and mislead consumers regarding its pediatric acetaminophen products.

2.    CVS is a drugstore chain with more than 9,000 retail locations throughout the United States and more than 1,100 stores in California. Defendant markets and, in stores and online, sells its own brand of over-the-counter medicines under the "CVS Health" label.

3.    Included in the CVS Health portfolio are pediatric pain relievers and fever reducers, including CVS Health Infants' Pain & Fever ("Infants' acetaminophen") and Children's Pain & Fever ("Children's acetaminophen"). CVS markets its private-label products as a "national brand equivalent," selling them alongside brand-name acetaminophen products such as Tylenol® Infants' Pain & Fever, Little Fevers® Infant Fever/Pain Reliever, Pedia Care® Fever Reducer Pain Reliever, and Triaminic® Infants' Syrup Fever Reducer Pain Reliever.

4.    Taking too much acetaminophen, the active ingredient in Defendant's Infants' and Children's pain relievers and fever reducers, can be dangerous or even fatal. This is an issue that concerns parents and other caregivers and causes them to be extra careful when purchasing medicines for infants and young children. The FDA specifically warns parents to be "very careful when you're giving your infant acetaminophen."

5.    Defendant exploits that fear and caution by designing its packaging to mislead consumers into believing that its Infants' acetaminophen is specially formulated for or has unique qualities that make it better suited for young infants than the product that is labeled as being for "children." The front of a box of Defendant's Infants' acetaminophen contains representations and a call to action, including the product name and an image of a parent holding a very young child, which are likely to deceive consumers into believing that the Infants' acetaminophen is

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

specially formulated for infants or otherwise possesses unique or beneficial qualities for infants.

6.      In reality, even though Defendant markets and, in stores and online, sells Infants' acetaminophen and Children's acetaminophen as two separate products to be used respectively to treat two different age groups, the medicines are identical—Infants' acetaminophen may be used by children older than one year and Children's acetaminophen may be used by children under the age of one indiscriminately.

7.      Thus, contrary to Defendant's representations, Infants' acetaminophen has no special qualities or properties that make it specially suited for infants, or that it should be used instead of the Children's acetaminophen.  The two medicines are the same.  There is no difference between the medicine sold in the Infants' packaging and the medicine sold in the Children's packaging.

8.      Although the Infants' packaging contains a direct comparison to name-brand Infants' Tylenol®, Defendant does not compare Infants' to Children's or disclose on the Infants' packaging that the medicine in its Infants' and Children's acetaminophen products are identical.

9.      Thus, Defendant has created and marketed Infants' acetaminophen in a manner that deceives reasonable consumers, like Plaintiff, into believing that Infants' acetaminophen is specially formulated for babies and is the only appropriate medication for them.

10.      Defendant's representations cause consumers economic harm because CVS charges substantially more for Infants' acetaminophen – approximately two and a half times as much per ounce and sometimes more – than it does for its Children's acetaminophen. [1]

## PARTIES

11.      Plaintiff Danielle Lokey is an individual and a resident of California.

12.      Defendant CVS Pharmacy, Inc. is a Rhode Island corporation without a principal

---

[1] To be clear, Plaintiff does not challenge Defendant's pricing decisions.  Nor does Plaintiff assert that the per-ounce price differential between Infants' and Children's is part of the alleged deception.  Plaintiff has not asserted and does not assert that the per-ounce price differential conveys that the higher priced Infants' product is the product more suitable for infants.  The per-ounce price differential is relevant not because it misleads, but rather because it evidences *the existence of* the economic injury that Plaintiff and the class have suffered.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

place of business in California. Defendant systematically and continuously does business in California and with California residents.

13.    Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 1 through 50, inclusive, and therefore sues those defendants by those fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when they are ascertained. Plaintiff is informed and believes and, on that ground, alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged and that Plaintiff's injuries and damages, as alleged, are proximately caused by those occurrences.

14.    Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants as to be liable for their conduct with respect to the matters alleged below. Plaintiff is informed and believes and, on that ground, alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that each knew or should have known about and authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all Defendants.

## JURISDICTION AND VENUE

15.    This Court has subject matter jurisdiction over this action under California Business & Professions Code §§ 17200, *et seq.*, and 17500, *et seq.* and under California Civil Code §§ 1770 and 1780.

16.    This Court has personal jurisdiction over the parties because Defendant continuously and systematically conducts business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and arose out of her contact with Defendant within California.

17.    Venue is proper in this Court because California Code of Civil Procedure §§ 395 and 395.5, and case law interpreting those sections, provide that if a foreign business entity fails

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

to designate with the office of the California Secretary of State a principal office in California, it is subject to being sued in any county in the state that plaintiff desires.  On information and belief, as of the date this Complaint is filed, Defendant is a foreign business entity that has failed to designate a principal office in California with the office of the Secretary of State.

18.    Venue also is proper under California Civil Code § 1780 (d), as Defendant is doing business in this County.

## FACTUAL ALLEGATIONS

**CVS Health Pediatric Acetaminophen Products**

19.    Defendant markets Infants' acetaminophen and Children's acetaminophen and, in stores and online, sells them as two different pediatric over-the-counter pain killers and fever reducers for two separate age groups.  Infants' acetaminophen usually is located in the "baby care" section of CVS stores, whereas Children's acetaminophen can usually be found in the "children's care" section some distance away.

20.    The medical definition of the term "infant" is "a young baby, from birth to 12 months of age"[2] or "a child younger than 1 year of age."[3]  In the pharmaceutical industry, there also are various conventions that are applied in sub-dividing the pediatric population by age.  For example, the FDA classification[4] for infants and children is as follows: "infant" refers to a child between the ages 1 month to 2 years, and "children" refers to those between 2 and 12 years.[5]  Similarly, the Centers for Disease Control and Prevention ("CDC") defines "infants" as being "0-1 year of age."[6]  The American Academy of Pediatrics ("AAP") also has a guide titled "Infant

---

[2] www.medicinenet.com/infant/definition.htm

[3] https://medical-dictionary.thefreedictionary.com/infant

[4] Guidance for Industry – General Considerations for Pediatric Pharmacokinetic Studies for Drugs and Biological products, Draft Guidance, US FDA, 10 November 1998.

[5] http://archives.who.int/eml/expcom/children/Items/PositionPaperAgeGroups.pdf.

[6] Child Development – Positive Parenting Tips – Infants (0-1 year) (available at https://www.cdc.gov/ncbddd/childdevelopment/positiveparenting/infants.html).

1    Food and Feeding,"[7] which identifies infants as being between ages 0 and 12 months.[8]

2        21.    Before 2011, the concentration of acetaminophen, the industry-wide active

3    ingredient in infants' and children's acetaminophen products, was higher in the infants' product

4    than in the children's product.  The differing concentrations were blamed for some consumers

5    providing wrong dosages to their children, causing them to overdose.  Between 2000 and 2009,

6    the FDA received 20 reports of children dying from acetaminophen toxicity.  At least three of

7    those deaths reportedly were tied directly to parents' errors involving the different concentration

8    levels.

9        22.    Thus, on December 22, 2011, to prevent confusion and accidental acetaminophen

10   toxicity, the FDA informed the public that liquid acetaminophen marketed for infants would be

11   available in a less concentrated formula  of 160 milligrams per 5 milliliters (160 mg/5 ml), exactly

12   matching the concentration in children's liquid acetaminophen and making the two medicines

13   identical in that respect.

14       23.    At all times since April 2016, the Infants' and Children's liquid acetaminophen

15   products marketed and sold by Defendant under its "CVS Health" brand have been available only

16   in identical concentrations.

17       24.    As the Infants' and Children's products have the identical concentration of

18   acetaminophen – 160 mg/5ml – both are equally suitable for infants and children.

19       25.     But Defendant obscures this fact by labeling that is likely to confuse a reasonable

20   consumer into believing that the medicines are distinct, that the Infants' acetaminophen possesses

21   properties that make it better suited for infants, and that the Children's acetaminophen has

22   properties making it suited for children (and implicitly *not* suited for infants).  Since at least April

23   2016, Defendant has engaged in the unfair, unlawful, deceptive and fraudulent practice of

---

[7] AAP.org, Infant Food and Feeding (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Food-and-Feeding.aspx).

[8] *Id.* at "Infant Timeline" (available at https://www.aap.org/en-us/advocacy-and-policy/aap-health-initiatives/HALF-Implementation-Guide/Age-Specific-Content/Pages/Infant-Timeline.aspx).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

marketing and selling the same medicine – pediatric liquid acetaminophen – as two unique medicines. As a result, parents, caregivers and other reasonable consumers have been misled into believing that they must purchase the far-more-expensive Infants' product for infants.

26. Since at least April 2016, Defendant has misled reasonable consumers by using deceptive marketing techniques that obscure critical facts. Those critical facts include that Infants' acetaminophen is not better suited for infants because Infants' and Children's acetaminophen are identical medications.

27. Defendant deceives parents, caregivers, and other reasonable consumers, injuring them by tricking them into paying *two and a half times as much per ounce* or even more for the deceptively-labeled Infants' acetaminophen than they would have to pay for the Children's product, *even though both products contain the same concentration of acetaminophen*.

28. Defendant deceives and misleads parents, caregivers and other reasonable consumers into believing that its Infants' product is the only liquid acetaminophen product that can be given to infants safely and that infants cannot safely take Children's acetaminophen.

29. The Infants' acetaminophen packaging furthers this misleading practice by showing a mother holding a very young child. In addition to the image, the outer packaging also includes the following statements, among others:

a. "**Infants'**" (in yellow lettering, which modifies the noun "acetaminophen," implying that it is an acetaminophen specifically for use by infants).

b. "Compare to the active ingredient in Infants' Tylenol® Oral Suspension."

A true and correct copy of the front of the Infants' acetaminophen packaging is reproduced below:

\\

\\

\\

\\

\\

\\

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861



30.    While the packaging compares the CVS Health Infants' acetaminophen to a name-brand counterpart (which likewise purportedly was formulated exclusively and specifically for infants), that counterpart *also* has the word "infants" modifying the noun "acetaminophen," indicating that it is to be used specifically for the care of infants.  Defendant's packaging does not state or otherwise disclose that it is the same medicine in the same concentration that is contained in Defendant's Children's acetaminophen, a product that is principally found some distance away in the "children's care" section of CVS stores (as opposed to the "baby care" section of the stores).

31.    Instead, the representations and images are a "call to action" that creates the opposite effect, essentially instructing parents and caregivers that Infants' acetaminophen is what must be purchased for infants.[9]  The word "Infants'" on the packaging serves both as an identification and as a direction.

---

[9] "Call to action" is a marketing term for a piece of content intended to induce a viewer to perform a specific act, typically in the form of an instruction or directive. https://www.lexico.com/en/definition/call_to_action.  The use of the word "Infants'" in the title of the product is a specific call to action – or instruction – that parents and caregivers should buy this product for their infant.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

32.     Similarly, the existence of Defendant's Children's acetaminophen furthers the deception by leading a reasonable consumer to believe that it consists of medicine that is specific to older children as opposed to infants.  The Children's box shows an image of an older child next to his mother, prominently displays the word "Children's" in yellow lettering, and expressly states that it is for children "Ages 2 to 11 years."  A true and correct copy of the front of the Children's acetaminophen packaging is reproduced below:



33.     Like the packaging of the Infants' acetaminophen (a product that usually is found some distance away in the "infant's care" or "babies" section), nowhere on the label of the Children's packaging does Defendant specifically state that the two medicines are identical.

### PARENTS AND REASONABLE CONSUMERS

34.     Defendant is aware of and counts on the reality that parents, caregivers and other reasonable consumers shopping for products to be given to infants are very cautious about what products – especially medicines – they give to infants.

35.     Numerous parenting resources, such as the popular parenting website "What to Expect," express the conventional understanding that infants always should be given the infant

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

formulations.[10]  Similarly, the frequently-visited website KidsHealth.org instructs parents to know "the name and purpose of the medicine" and to "never give a child medicine that is meant for adults."[11]

36.    Defendant's deceptive labeling and packaging exploit parents' conventional understanding that parents and caregivers should purchase medicine titled "Infants'" when evaluating and choosing medicine for their babies.  That conventional understanding is supported by the definitions and classifications provided by the FDA, CDC, and AAP noted above. Consumers reasonably may believe – and they have a right to believe – that a product that is labeled and marketed for consumption by "infants" is specifically meant to be used by those between the ages of zero months and two years.

37.    A reasonable consumer has no duty to inspect and compare products.[12]  Thus, a parent of an infant has no duty to inspect "children's" products and compare them to "infants'" products.

38.    KnowYourDose.org, an acetaminophen awareness coalition, instructs parents to use formulations made only for infants and children.  The website also warns parents to "always look at the minimum age recommended for taking the medicine and don't give it to your child if he/she is younger than the recommended age unless you have discussed it with your healthcare provider."[13]  Thus, a reasonable consumer may believe that Children's acetaminophen is suitable only for children two and over and logically infer that Infants' acetaminophen is specially formulated or made for children younger than two.

39.    In fact, a survey of consumer perceptions of Infants' Tylenol® packaging revealed that consumers overwhelmingly believed that Infants' Tylenol® is "specially formulated" for infants, with more than half of the respondents stating that the Infants' product is for infants under

---

[10] https://www.whattoexpect.com/family/childrens-health-and-safety/medication-safety-guidelines-tips

[11] https://kidshealth.org/en/parents/medication-safety.html.

[12] *See* footnotes 21-24, *infra*.

[13] https://www.knowyourdose.org/acetaminophen-for-infants-and-children/kyjui

KELLER GROVER LLP

1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

age 1.  For survey participants who saw both the Infants' Tylenol® package and the Children's Tylenol® package, many respondents stated that the products were for "different children" and that Children's Tylenol® was "specially formulated for children 2-11."

40.    Thus, calling the product "Infants" and representing to consumers that Infants' acetaminophen is somehow different or specially formulated so that it alone should be used in caring for infants is misleading to reasonable consumers.  Defendant's deceptive and misleading advertising, marketing, packaging and sales practices harness the fear of acetaminophen toxicity to trick consumers, including Plaintiff, into purchasing and overpaying for Infants' acetaminophen when Children's acetaminophen would be equally safe and effective at a fraction of the price.

41.    No reasonable consumer would pay two and a half times as much per ounce or even more for the identical medicine unless he or she had been deceived or misled into believing that the more-expensive medicine was different and specially suited for his or her infant (and that the less expensive Children's acetaminophen was not suited for—and indeed might be *harmful* to—the infant).

42.    Plaintiff has had reason to purchase Defendant's Infants' liquid acetaminophen products on several occasions between April 2016 and the present and has done so.  On at least one occasion, Plaintiff purchased Defendant's Infants' liquid acetaminophen from a CVS pharmacy located in northern California for use by her child who, at that time, was under two years of age.  When purchasing the product, Plaintiff saw the word "Infants'" and the image of the very young child and believed Infants' acetaminophen to be specially formulated for young infants like her child.  Relying on the name of the product itself and Infants' packaging and labeling, Plaintiff purchased the Infants' version of Defendant's liquid acetaminophen.

## **REASONABLE CONSUMER STANDARD**

43.    The "reasonable consumer" standard applies to FAL and UCL claims[14], as well as

---

[14] *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950-951 (2002).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    to CLRA claims.[15]

2    44.    A "reasonable consumer" is an ordinary consumer acting reasonably under the

3    circumstances.[16]  Such a consumer "need not be exceptionally 'acute and sophisticated,'" nor must

4    the consumer "necessarily be wary or suspicious of advertising claims."[17]

5    45.    To meet the reasonable consumer standard, "a plaintiff need only show that

6    members of the public are likely to be deceived" by the defendant's advertising.[18]  Members of

7    the public are likely to be deceived by advertising that is false and by advertising that, "although

8    true, is either actually misleading or…has a capacity, likelihood, or tendency to deceive or confuse

9    the public."[19]

10    46.    As the U.S. Supreme Court has long recognized:

11    "***Advertisements as a whole may be completely misleading although every sentence***

12    ***separately considered is literally true.*** This may be because things are omitted that should

13    be said, or because advertisements are composed or purposefully printed in such way as to

14    mislead.  [Citations.] ***That exceptionally acute and sophisticated readers might have been***

15    ***able by penetrating analysis to have deciphered the true nature of the contest's terms is***

16    ***not sufficient to bar findings of fraud by a factfinding tribunal. Questions of fraud may***

17    ***be determined in the light of the effect advertisements would most probably produce on***

18    ***ordinary minds.***  [Citations.]  ***People have a right to assume that fraudulent advertising***

19    ***traps will not be laid to ensnare them. 'Laws are made to protect the trusting as well as***

20    ***the suspicious.***'"[20]

21

22

23    [15] *Aron v. U-Haul Co. of California*, 143 Cal.App.4th 796, 806 (2006).

24    [16] *Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 948 (2020), citing *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal.App.4th 663, 682 (2006).

25    [17] *Id.*, citing *Lavie v. Proctor & Gamble Co.*, 105 Cal.App.4th 496, 509-510 (2003).

26    [18] *Colgan*, 135 Cal.App.4th at 682.

27    [19] *Kasky*, 27 Cal.4th at 951.

      [20]  *Donaldson v. Read Magazine*, 333 U.S. 178, 188-189 (1948) [emphasis added].

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

47.     Reasonable consumers are not expected to look beyond misleading misrepresentations on the front of a package to discover truths in small print on the back.[21]  Further, reasonable consumers are not required to be "versed in the art of inspecting and judging a product."[22]  Consumers also are not required to undertake an investigation and make a one-to-one comparison of various competing products.[23]

48.     As courts have held, it is "***an untenable position***" *that "the hypothetical 'reasonable consumer'* would, as a matter of law, examine the makeup of a [product]; that such a consumer would not rely upon the expertise of pharmacologists and doctors but **would instead analyze the various concentrations of [ingredients] in each [product] and draw a personal conclusion** about which ingredients he/she needed."[24]

49.     It likewise is untenable that a reasonable consumer would understand the importance of any particular concentration of an "active ingredient," whether stated in metric-system measurements or otherwise.  Merely disclosing an ingredient concentration does not mean anything to the average reasonable consumer.

50.     Studies have shown that, on average, a consumer spends twenty minutes in a supermarket and sees twenty packages per second.  Research also has found that 73% of purchase decisions are made in the store[25] and that, on average, a consumer spends 8.5 seconds reviewing a package prior to purchase.[26]  Thus, a reasonable consumer spends far less than a minute making a purchasing decision and is not required – let alone able – to compare products in that time.

51.     Representations "may not be misleading in isolation, but are deceptive when

---

[21] *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

[22] *Skinner*, 53 Cal.App.5th at 949, citing *Colgan*, 135 Cal.App.4th at 682.

[23] *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 U.S. Dist. LEXIS 117587, at *8-9 (C.D. Cal. 2014).

[24] *Brady v. Bayer Corp.*, 26 Cal.App.4th 1156, 1160 (2018).

[25] Etzel, Michael, Bruce Walker, William Stanton (2007), Marketing (14th Ed.) McGraw Hill, 272-273.

[26] Angela Peters-Texeira and Neela Badria (2005) "Consumers' Perception of Food Packaging in Trinidad, West Indies and its Related Impact on Food Choices," International Journal of Consumer Studies, 29 (6): 508-514.

considering the package and advertisement as a whole."*27*  Thus, a "perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable."*28*

## EQUITABLE RELIEF

52.     Absent an equitable injunction enjoining Defendant's conduct, Plaintiff and the public will be irreparably harmed and will be denied an effective and complete remedy because they face a real and tangible threat of future harm from Defendant's ongoing conduct, which cannot be remedied with monetary damages.

53.     At this early juncture, Plaintiff does not know whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time, nor does Plaintiff know whether the Court will find that any such model adequately compensates Plaintiff's and the Class's losses.  Therefore, Plaintiff sets forth alternate theories of legal damages and equitable restitution.

54.     As described in this Complaint, Defendant's material misrepresentations and omissions on the packaging of its Infants' acetaminophen are ongoing and represent an ongoing threat to Plaintiff and members of the general public who are likely to be subjected to Defendant's misleading representations and to risk being injured.  Thus, on behalf of herself, the Class, and the general public, Plaintiff seeks an injunction prohibiting Defendant from the marketing and packaging of the Infants' acetaminophen with the misleading representations described in this Complaint.  Specifically, Plaintiff seeks clear disclosures that there is no pharmacological distinction between its Infants' acetaminophen and Children's acetaminophen products and that the two products can be used interchangeably in a manner that is safe for infants and children. Plaintiff does not seek any relief – equitable or otherwise – that would purport to require Defendant

---

[27] *Mullins v. Premier Nutrition Corp.*, 178 F.Supp.3d 867, 889 (N.D. Cal. 2016).  *See also Bruton v. Gerber Prods. Co.*, 2017 U.S. App. LEXIS 12833, at *3 (9th Cir. 2017) (noting that "even technically correct labels can be misleading"); *Lima v. Gateway, Inc.*, 710 F.Supp.2d 1000, 1007 (C.D. Cal. 2010) (holding that statements "cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole").

[28] *Day v. AT&T Corp.*, 63 Cal.App.4th 325, 332-333 (1998); *Aron*, 143 Cal.App.4th at 807.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1  to sell Infants' or Children's at any particular price.

2  **CLASS ACTION ALLEGATIONS**

3      55.    Plaintiff brings this action under Federal Rule of Civil Procedure Rule 23 on behalf

4  of herself and the class defined as follows:

5          All California residents who purchased CVS-branded Infants' liquid acetaminophen for a

6          non-commercial use at any time during the applicable limitations period preceding the

7          filing of the Complaint in this matter and through and including the date of resolution.

8      56.    The class that Plaintiff seeks to represent contains numerous members and is

9  ascertainable.  Plaintiff reserves the right to amend or modify the class definition and/or to add

10 subclasses or limitations to particular issues.

11     57.    By its unlawful actions, Defendant has violated California Business & Professions

12 Code §§ 17200, *et seq*. and 17500, *et seq*. and California Civil Code § 1770.  The questions raised

13 are, therefore, of common or general interest to the class members, who have a well-defined

14 community of interest in the questions of law and fact raised in this action.

15     58.    Plaintiff's claims are typical of those of the class, as Plaintiff now suffers and has

16 suffered from the same violations of the law as other putative class members.  Plaintiff has retained

17 counsel with substantial experience in prosecuting complex litigation and class actions to represent

18 her and the class, and Plaintiff will fairly and adequately represent the interests of the class.

19 **Numerosity**

20     59.    Based on information and belief, the Class consists of at least 100 individuals,

21 making joinder of individual cases impracticable.

22 **Typicality**

23     60.    Plaintiff's claims are typical of the claims of all of the other members of the class.

24 Plaintiff's claims and the class members' claims are based on the same legal theories and arise

25 from the same unlawful conduct, resulting in the same injury to Plaintiff and to all of the other

26 class members.

27 **Common Questions of Law and Fact**

28     61.    There are questions of law and fact common to the class that predominate over any

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  questions affecting only individual class members.  Those common questions of law and fact

2  include, without limitation, the following:

    a.    Whether Defendant's marketing, advertising, and packaging of Infants'

3   

4      acetaminophen are likely to deceive reasonable consumers;

    b.    Whether Defendant's marketing, advertising, and packaging of Infants'

5   

6      acetaminophen caused Plaintiff and the class to suffer economic harm;

    c.    Whether Defendant violated California Business & Professions Code §§

7   

8      17200, *et seq.*;

    d.    Whether Defendant violated California Business & Professions Code §§

9   

10      17500, *et seq.*;

11      e.    Whether Defendant violated California Civil Code § 1770;

    f.    Whether Defendant's marketing, advertising, and packaging of Infants'

12   

13      acetaminophen were misleading to reasonable consumers; and

    g.    Whether Plaintiff and the class are entitled to restitution and/or other

14   

15      remedies and, if so, the appropriate measure(s).

16  **Adequacy**

17      62.    Plaintiff will fairly and adequately represent and protect the interests of the other

18  members of the class.  Plaintiff has retained counsel with substantial experience in prosecuting

19  complex litigation and class actions.  Plaintiff and her counsel are committed to prosecuting this

20  action vigorously on behalf of the class members and have the financial resources to do so.  Neither

21  Plaintiff nor her counsel have any interests adverse to those of the other class members.

22  **Superiority**

23      63.    Because the monetary damages suffered by individual class members are relatively

24  small, the expense and burden of individual litigation make it impossible for individual class

25  members to seek redress for the wrongful conduct described in this complaint.  If class treatment

26  of these claims is not available, Defendant likely will continue its wrongful conduct, unjustly retain

27  improperly-obtained revenues, and otherwise escape responsibility for its wrongdoing.

28      64.    A class action is superior to other available methods for the fair and efficient

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

adjudication of this controversy because individual litigation of the claims of all class members is impracticable and questions of law and fact common to the class predominate over any questions affecting only individual members of the class. Even if every individual class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required. Individualized litigation also would present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action with respect to some or all of the issues will present fewer management difficulties, conserve the resources of the court system and the parties and protect the rights of each class member. Further, it will prevent the very real harm that would be suffered by numerous putative class members who simply will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage as their punishment for obeying the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

65. The prosecution of separate actions by individual class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other class members not parties to those adjudications or that would substantially impair or impede the ability of those non-party class members to protect their interests.

66. The prosecution of individual actions by class members would run the risk of establishing inconsistent standards of conduct for Defendant.

## FIRST CAUSE OF ACTION
### Violations of False and Misleading Advertising Law
### (California Bus. & Prof. Code §§ 17500, *et seq.*)

67. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

68. California's False Advertising Law, California Business & Professions §§ 17500, *et seq.*, makes it unlawful for any person "with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device…or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue **or misleading,** and which is known, or which by the exercise of reasonable care should be known, to be untrue **or misleading**. . . ."  [Emphasis added.]

69.     In its naming, labeling, marketing, advertising, packaging and selling of Infants' acetaminophen, Defendant made, and continues to make, misleading statements in order to induce consumers to purchase Infants' acetaminophen on a false premise, all in violation of California Business & Professions §§ 17500, *et seq*.  Such misleading statements include the naming, labeling, marketing, advertising, packaging, and selling of Infants' acetaminophen in such a manner as to obscure that Infants' acetaminophen is the same medicine as Children's acetaminophen and to induce an erroneous belief that they are different.

70.     Defendant is engaging and has engaged in the deceptive conduct alleged above to induce the public to purchase the more-expensive Infants' product.  In its naming, labeling, marketing, advertising, packaging, and selling of Infants' acetaminophen, Defendant knew or should have known that its statements regarding Infants' acetaminophen were and are misleading, without basis, and unreasonable.

71.     In its naming, labeling, marketing, advertising, packaging, and selling of Infants' acetaminophen, Defendant knew or through the exercise of reasonable care should have known that its statements regarding the characteristics of Infants' acetaminophen were misleading.

72.     As alleged above, Plaintiff and the class were misled into purchasing Infants' acetaminophen by Defendant's misleading naming, labeling, marketing, advertising, packaging, and selling of Infants' acetaminophen.  In particular, Plaintiff and the class were misled by Defendant's uniform misrepresentations and omissions and that Infants' acetaminophen had benefits that it does not:  namely, that it is more suitable and safer for infants than Children's acetaminophen would be, when in fact the two have the identical active ingredient.

73.    Further, Defendant's use of various forms of naming, labeling, marketing, advertising, packaging, and selling has deceived and is likely to continue to deceive the consuming public in violation of California Business & Professions Code §§ 17500, *et seq*. No reasonable consumer would be willing to pay two and a half times as much per ounce or even more for one product versus an identically formulated product unless he or she were deceived or misled into believing that the more-expensive product was different and better.

74.    Plaintiff and the class have suffered injury in fact and have lost money as a result of Defendant's false representations. Indeed, Plaintiff and the class purchased the more-expensive Infants' product *because of* Defendant's misrepresentations. Plaintiff, like members of the class, would not have purchased Infants' acetaminophen if she had known that the advertising and representations described above were false and misleading.

75.    Plaintiff's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff sues on behalf of the proposed class as well as on behalf of herself and the general public.

76.    Injunctive relief is necessary and appropriate to prevent Defendant from repeating or continuing its wrongful business practices alleged above.

77.    Plaintiff takes upon herself enforcement of these laws and lawful claims. There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

### SECOND CAUSE OF ACTION
**Violations of Unfair Competition Law**
**(Violations of California Bus. & Prof. Code §§ 17200, *et seq*.)**

78.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

79.    California Business & Professions Code §§ 17200, *et seq*. prohibit unfair competition in the form of any unlawful, unfair, deceptive or fraudulent business act or practice.

80.    Plaintiff has standing to pursue this claim as Plaintiff has suffered an injury in fact

and has lost money or property as a result of Defendant's actions as described herein. In particular, Plaintiff purchased Infants' acetaminophen and, in doing so, relied on Defendant's misrepresentations and omissions of material facts as described herein. Had Defendant disclosed to Plaintiff that the medicine in Infants' acetaminophen is identical to the medicine in Children's acetaminophen and that the lower-priced Children's acetaminophen is as suitable and safe for use by infants as Infants' acetaminophen is, Plaintiff would not have purchased the far-more-expensive Infants' acetaminophen.

81.    Defendant's conduct in labeling, marketing, advertising, packaging and selling Infants' acetaminophen violates, among other statutes, the California False Advertising Law (California Business & Professions Code §§ 17500, *et seq*.) and the California Consumers Legal Remedies Act (California Civil Code §§ 1750, *et seq*.), and is likely to deceive reasonable consumers. No reasonable consumer would be willing to pay two and a half times as much per ounce or even more for one product versus an identically formulated product unless he or she had been deceived or misled into believing that the more expensive product was different and better.

82.    Defendant is aware that the claims and representations it makes about Infants' acetaminophen are deceptive, false, and misleading. Defendant is aware of and counts on the reality that parents, caregivers and other consumers shopping for products to be given to infants are cautious about what products – especially medicines –they give to infants.

83.    The violations of those laws and the acts and practices described in this Complaint constitute unlawful, unfair, deceptive and fraudulent business acts and practices and unfair competition within the meaning of California Business & Professions Code §§ 17200, *et seq*.

84.    As a direct and proximate result of those acts and practices, Defendant has received and continues to hold as ill-gotten gains money and property belonging to Plaintiff and the class, in that Defendant has profited in those amounts from its unlawful, unfair, deceptive and fraudulent business acts and practices.

85.    California Business & Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of unfair, deceptive and fraudulent business acts and practices and may order restitution by

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

Defendant to Plaintiff for the practices alleged in this complaint.  Plaintiff and putative class members are entitled under California Business & Professions Code §§ 17203 and 17208 to restitution and restoration of all ill-gotten money and property belonging to Plaintiff and the class.

86.     Plaintiff's success in this action will enforce important rights affecting the public interest and, in that regard, Plaintiff sues on behalf of the proposed class as well as on behalf of herself and the general public.

87.     Injunctive relief is necessary and appropriate to prevent Defendant from repeating or continuing its wrongful business practices that are alleged above.

88.     Plaintiff takes upon herself the enforcement of these laws and lawful claims.  There is a financial burden incurred in pursuing this action and it would be against the interests of justice to penalize Plaintiff by forcing her to pay attorneys' fees from the recovery in this action. Therefore, an award of attorneys' fees is appropriate under California Code of Civil Procedure § 1021.5.

### THIRD CAUSE OF ACTION
#### Violations of Consumer Legal Remedies Act
#### (Violations of California Civil Code §§ 1750, *et seq.*)

89.      Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

90.     Plaintiff brings this claim individually and on behalf of the class.

91.     At all relevant times, Plaintiff was and is a "consumer" as defined in California Civil Code § 1761(d).

92.     At all relevant times, Defendant was and is a "person" as defined in California Civil Code § 1761(c).

93.     At all relevant times, Defendant's Infants' liquid acetaminophen was and is within the meaning of "goods" as defined in California Civil Code § 1761(a).

94.     At all relevant times, the purchases of Defendant's Infants' liquid acetaminophen by Plaintiff and class members have constituted and continue to constitute "transactions" as defined in California Civil Code § 1761(e).

95.     California Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have …." Defendant has violated and continues to violate California Civil Code § 1770(a)(5) by its actions in deceiving consumers into thinking that they should or must purchase the far-more-expensive Infants' product instead of the identically formulated Children's product for children under two. Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant misrepresents the particular characteristics, ingredients, uses, benefits or qualities of the goods.

96.    California Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendant has violated and continues to violate California Civil Code § 1770(a)(7) by its actions in deceiving consumers into thinking that they should or must purchase the Infants' product for infants. Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that Defendant misrepresents the particular standard, quality, or grade of the goods.

97.    California Civil Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendant has violated and continues to violate California Civil Code § 1770(a)(9) by its actions in advertising a product that purportedly was prepared especially for infants but then selling a product that was formulated identically to a far less expensive product for children who are not infants.

98.    California Civil Code § 1770(a)(16) prohibits "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." By selling a product that, after it is sold, continues to bear its label containing the misrepresentation that the product is specifically formulated for infants, Defendant is making an ongoing misrepresentation that a product made specifically for infants has been sold when, in reality, the medicine in the product is no different from the medicine in Defendant's product for children who are not infants. By making that misrepresentation, Defendant has violated and continues to violate California Civil Code § 1770(a)(16).

99.    Defendant's misrepresentations and omissions were uniform and made with the

---

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

intent to deceive Plaintiff and the class and deprive them of their legal rights and money. Plaintiff and the class acted reasonably when they purchased Infants' acetaminophen on the belief that Defendant's representations were true and lawful.

100.    Defendant knows and has known that Infants' acetaminophen and Children's acetaminophen are identically formulated and that the lower-priced Children's acetaminophen is suitable and safe for infants. Plaintiff and the class suffered injuries caused by Defendant because they would not have purchased Infants' acetaminophen instead of the identically formulated Children's acetaminophen absent Defendant's misrepresentations and omissions.

101.    Under California Civil Code § 1780(a), Plaintiff and the class seek injunctive and equitable relief for Defendant's violations of the California Consumers Legal Remedies Act.

102.    On April 29, 2020, Plaintiff sent Defendant a California Civil Code § 1782(a) notice advising Defendant of its violations of California Civil Code § 1770. Because Defendant has failed to take corrective action within 30 days of receipt of the demand letter, Plaintiff now amends the complaint to include a request for damages as permitted by California Civil Code § 1782(d). Specifically, Plaintiff requests damages as follows:

103.    The sum necessary to place Plaintiff and all class members in the position they would be in if, instead of purchasing Defendant's Infants' acetaminophen on any occasion on which they purchased it during the Class Period, they instead had purchased Defendant's Children's acetaminophen product.

104.    Attached hereto as Exhibit 1 is the declaration of venue required by California Civil Code § 1780(d).

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and members of the class, prays for the following relief:

a.    An order certifying the class, appointing Plaintiff Danielle Lokey as the representative of the class, and appointing counsel for Plaintiff as lead counsel for the class;

b.     An order enjoining Defendant from engaging in the acts and practices complained of in this complaint;

c.     Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and losses caused by the acts and practices that violated California Business & Professions Code §§ 17500, *et seq.*;

d.     Disgorgement of profits and restitution and restoration of all costs incurred, sums or property unlawfully withheld, and/or losses caused by the acts and practices that violated California Business & Professions Code §§ 17200, *et seq.*;

e.     Equitable relief arising from the acts and practices that violated California Civil Code § 1770;

f.     Damages as permitted by California Civil Code §§ 1780 and 1782(d);

g.     Payment of costs of the suit;

h.     Payment of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

i.     An award of pre- and post-judgment interest to the extent allowed by law; and

j.     Such other or further relief as the Court may deem proper.

Respectfully submitted,

Dated:  December 4, 2020                    **KELLER GROVER LLP**

By:   /s/ *Eric A. Grover*
      _____
      ERIC A. GROVER
      RACHAEL G. JUNG
      *Attorneys for Plaintiff*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Respectfully submitted,

Dated:  December 4, 2020          **KELLER GROVER LLP**


By:  /s/ *Eric A. Grover*
_____
ERIC A. GROVER
RACHAEL G. JUNG
*Attorneys for Plaintiff*

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## EXHIBIT 1

**CLRA VENUE DECLARATION OF PLAINTIFF DANIELLE LOKEY**

I, Danielle Lokey, hereby declare and state as follows:

1.  I have personal knowledge of the facts stated herein and, if called upon to do so, could competently testify thereto.

2.  I am the Plaintiff in this action.

3.  I submit this declaration as required by California Civil Code § 1780(d).

4.  This action is being brought in a county where Defendant CVS Pharmacy, Inc. is doing business.  Defendant has numerous stores in Alameda County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.  Executed this 5 ___ day of May, 2020 in Sactamento _____, California.

_____
Danielle Lokey