UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DANIELLE LOKEY, individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>CVS PHARMACY, INC.,<br><br>Defendant. | Case No. 20-cv-04782-LB<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 42 |

**INTRODUCTION**

In this putative class action, the plaintiff challenges CVS Pharmacy's marketing of its CVS-branded pain-and-fever medicine for infants (called Infants' acetaminophen) at a higher price than its CVS-branded pain-and fever medicine for children (called Children's acetaminophen), even though the ingredients in the two products are the same. She claims that this practice violates three California consumer-protection laws: (1) California's False Advertising Law (FAL), Cal. & Prof. Code § 17500; (2) California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200–08; and (3) California's Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750–84.[1] The court previously dismissed the plaintiff's initial complaint on the ground that — as a

---

[1] First Am. Compl. (FAC) – ECF No. 40. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

United States District Court
Northern District of California

matter of law — the labels disclosed the products' composition and would not deceive a reasonable consumer.[2] The amended complaint changes the allegations about product placement in the store and adds allegations about consumer confusion. Given the labels, however, the new allegations do not alter the court's earlier conclusion that the labels would not deceive a reasonable consumer. The court thus dismisses the complaint.

## STATEMENT

### 1.  Allegations in the Complaint

CVS markets and sells its CVS-branded products in its stores and online — including an infants' liquid acetaminophen and a children's liquid acetaminophen — under the "CVS Health" label.[3] Named plaintiff Danielle Lokey bought the infants' acetaminophen on several occasions "between April 2016 and the present. . . ."[4] The products are identical compositionally, but CVS charges a higher price (as much as two and a half times) for the infants' product.[5]

The front labels for the two products describe their composition identically (including their concentrations of 160 mg/5 mL) but brand them for infants (with a syringe for administering the dosage and with no representation about infant age) and children (with a dosage cup and a representation that the product is for children from ages two to 11 years). (The FDA requires that liquid acetaminophen must be available for infants and children only in concentrations of 160 milligrams per 5 milliliters.[6]) The complaint has the front labels, and CVS submitted the full labels. The following are the images of the labels: the first two are from CVS, and the third is the slightly different (but virtually identical) Infants' label in the complaint.[7]

---

[2] Order – ECF No. 36.

[3] FAC – ECF No. 40 at 2 (¶ 3).

[4] *Id.* at 11 (¶ 42).

[5] *Id.* at 3 (¶ 10), 7 (¶ 27).

[6] *Id.* at 6 (¶ 22).

[7] The court takes judicial notice of the labels and considers them under the incorporation-by-reference doctrine. Order – ECF No. 36 at 2 n.9; Req. for Judicial Notice – ECF Nos. 11, 31; Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). The label in the FAC for the Infants' formula has a mother, not a father, but is essentially the same. FAC – ECF Nos. 40 at 8 (¶ 29b).

United States District Court
Northern District of California

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28






The infants' label has the following instructions for dosages:

Dosing Chart

| Weight (lb) | Age (yr) | Dose (mL)* |
|---|---|---|
| under 24 | under 2 years | ask a doctor |
| 24–35 | 2–3 years | 5 mL |

*or as directed by a doctor

The children's label has the following instructions for dosages:

| Weight (lb) | Age (yr) | Dose (mL)* |
|---|---|---|
| under 24 | under 2 years | ask a doctor |
| 24–35 | 2–3 years | 5 mL |
| 36–47 | 4–5 years | 7.5 mL |
| 48–59 | 6–8 years | 10 mL |
| 60–71 | 9–10 years | 12.5 mL |
| 72–95 | 11 years | 15 mL |

*or as directed by a doctor

The previous complaint said that the two products were displayed on the same shelf in CVS's retail stores (creating confusion).[8] The amended complaint said that the products are in two different places: the children's product "is principally found some distance away in the 'children's care' section of CVS stores (as opposed to the 'baby care' section of the stores)."[9]

The complaint explains why the products' compositions are identical. Before 2011, the acetaminophen concentrations in infants' and children's products were different, which led

---

[8] Compl. – ECF No. 4-1 at 4 (¶ 4).

[9] FAC – ECF No. 40 at 8 (¶ 30).

consumers to give incorrect doses, causing overdoses. By December 2011, to prevent overdoses, the FDA said that liquid acetaminophen marketed for infants would be available only in concentrations of 160 milligrams per 5 milliliters (the 160 mg/5 ml reflected on the labels).[10]

The complaint's allegations address consumer habits and confusion. Parents are careful when they buy medicines for infants. CVS exploits this caution by packaging that suggests that its Infants' products are specially formulated for infants. Parents have a conventional understanding that they should buy medicine branded for infants: "Numerous parenting resources, such as the popular parenting website 'What to Expect,' express the conventional understanding that infants always should be given the infant formulations. Similarly, the frequently visited website KidsHealth.org instructs parents to know 'the name and purpose of the medicine' and to 'never give a child medicine that is meant for adults.'" The acetaminophen-awareness coalition KnowYourDose.org warns parents to "always look at the minimum age recommended for taking the medication and don't give it to your child if he/she is younger than the recommended age unless you have discussed it with your healthcare provider."[11]

The products are "wholly interchangeable in all material respects." CVS's deceptive practices "harness the fear of acetaminophen toxicity to trick consumers . . . into purchasing and overpaying for Infants' acetaminophen when Children's acetaminophen would be equally safe and effective at a fraction of the price."[12]

## 2.  Relevant Procedural History

The court dismissed the plaintiff's earlier complaint with leave to amend. The plaintiff amended the complaint, and CVS moved to dismiss it. All parties consented to magistrate-judge jurisdiction. [13] The court held a hearing on February 18, 2021.

---

[10] *Id.* at 6 (¶¶ 21–22).

[11] *Id.* at 9–10 (¶¶ 34–36, 38) (website citations omitted).

[12] *Id.* at 11 (¶ 40). The FAC also references a consumer survey about Infants' Tylenol, where customers believed it to be specially formulated for infants. *Id.* at 10–11 (¶ 39); Mot. – ECF No. 42 at 10 (arguing irrelevance). The allegations are conclusory, about a different product, and thus irrelevant.

[13] Order – ECF No. 36; FAC – ECF No. 40; Mot. – ECF No. 42; Consents – ECF Nos. 12, 14.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co*., 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

**ANALYSIS**

CVS moved to dismiss the amended complaint on the ground that the plaintiff did not plausibly plead that the products' packaging — which disclosed that the products were compositionally identical and differ in that they display different pictures of children and different dosing devices (a syringe for infants and a cup for children) — would deceive a reasonable

United States District Court
Northern District of California

1  consumer.[14] The plaintiff countered that she plausibly alleged consumer confusion, and it is a fact

2  question — not suitable for resolution at a motion to dismiss — whether the labels are misleading

3  or deceptive.[15] The labels here are not deceptive. As a result, the plaintiff's challenge is only to the

4  different pricing, which is not justiciable.

5      Claims under the CLRA, FAL, and UCL are governed by the "reasonable consumer" test.

6  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable

7  consumer standard, [plaintiffs] must show that members of the public are likely to be deceived."

8  *Id.* (cleaned up). "[W]hether a business practice is deceptive will usually be a question of fact not

9  appropriate for decision on [a motion to dismiss]" because [it] requires "'consideration and

10  weighing of evidence from both sides.'" *Id.* at 938–39 (cleaned up) (quoting *Linear Tech. Corp. v.*

11  *Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "The California Supreme Court

12  has recognized that these laws prohibit 'not only advertising which is false, but also advertising

13  which, although true, is either actually misleading or which has a capacity, likelihood or tendency

14  to deceive or confuse the public.'" *Id.* at 938 (cleaned up) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th

15  939, 951 (2002)). "A perfectly true statement couched in such a manner that it is likely to mislead

16  or deceive the consumer, such as by failure to disclose other relevant information, is actionable

17  under these sections." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 332–33 (1998).

18      As the court held previously, the labels are not deceptive. The front labels for both products

19  show their concentrations of 160 milligrams per 5 milliliters (the 160 mg/5 ml reflected on the

20  labels). Obviously, the products are targeting different markets: parents of infants and parents of

21  children. Obviously, the CVS labeled the products differently, branding them an infants' product

22  and a children's product (shown by the names, the photographs of the children, and the different

23  devices to deliver the doses: a syringe for infants and a cup for children). But nothing about the

24  labels is misleading about the products or their composition. To the contrary, the labels are

25  accurate. *Bush v. Mondelez Int'l, Inc.*, No. 16-CV-02460-RS, 2016 WL 7324990, at *2–3 (N.D.

26

27    [14] Mot. – ECF No. 42 at 6.

28    [15] Opp'n – ECF No. 46 at 7.

Cal. 2016) (consumer-deception claim was implausible because no reasonable consumer was likely to be deceived by packaging that disclosed the net weight and number of cookies per container); *Sponchiado v. Apple Inc.*, 18-CV-07533-HSG, 2019 WL 6117482, at *4–5 (N.D. Cal. Nov. 18, 2018) (dismissing CLRA, UCL, and FAL claims challenging Apple's alleged misrepresentations about pixel resolution because disclaimer language appearing 10 lines below contradicted the plaintiffs' interpretation).

This case is like *Boris v. Wal-Mart Stores*, addressed in the earlier order. 35 F. Supp. 3d 1163 (C.D. Cal. 2014), *aff'd*, 659 F. App'x 424 (9th Cir. 2016). In *Boris*, a putative class action, the plaintiffs challenged two Wal-Mart headache-relief products that had the same composition (ingredients and amounts), were branded differently (Equate Migraine with a red background and Equate Extra Strength Headache Relief with a green background), and were priced differently (the migraine product was priced higher than the other product). *Id.* at 1166. The plaintiffs alleged that the difference in pricing conveyed that the higher-priced medicine was more effective. *Id.* at 1168. The court dismissed the FAL, UCL, CLRA claims (and similar claims under New York and New Jersey consumer-protection statutes), holding that the product background was not deceptive and the plaintiffs' challenge to the merchant's pricing decisions was not justiciable. *Id.* at 1169–70.

> Plaintiffs have not pointed to any specific constitutional, statutory, or regulatory provision that embodies a policy that Equate Migraine's price and red packaging violate. And the Court is aware of none. Absent some legislative enactment, price setting is ordinarily left to the business judgment of merchants. Taken to its logical conclusion, Plaintiffs' claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis. . . . To state this reality is to demonstrate that it is untenable: price regulation is a political question beyond the judiciary's authority. A question is a political question and therefore nonjusticiable when, for example, there is "a lack of judicially discoverable and manageable standards for resolving it [ ] or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion . . ." *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 7 L.Ed.2d 663 (1962). California courts have consistently described price regulation as "a question of economic policy . . . [i]t is the Legislature's function, not ours, to determine the wisdom of economic policy. Judicial intervention in such economic issues is improper.

*Id.* at 1171–72 (cleaned up) (collecting cases). Like *Boris*, this case involves compositionally identical products targeted at two audiences (there, migraine sufferers and headache sufferers and

United States District Court
Northern District of California

United States District Court
Northern District of California

here, parents of infants and parents of children). Both involve different branding (the backgrounds in *Boris* and the images of infants and children here) to entice different audiences. Both cases involve a price premium on a product marketed to one audience. Applying *Boris*, because there is no deception beyond the price differential, the plaintiff's challenge is a non-justiciable challenge to CVS's pricing decisions. *Id.* at 1172.

The plaintiff cites two out-of-district cases, *Elkies* and *Youngblood* — both involving challenges to pain relievers with identical compositions that were marketed to different audiences (parents of infants and parents of children) — to support her contention that she plausibly pleads a case of deception.[16] In *Elkies*, the products were infants' Tylenol and children's Tylenol. *Elkies v. Johnson & Johnson Servs.*, *Inc.*, No. 17-cv-07320-GW, Order – ECF No. 53 at 2 (C.D. Cal. Feb. 22, 2018). In *Youngblood*, the products were the products in this case. *Youngblood. v. CVS*, No. 2:20-cv-06251-MCS-MRW, Order – ECF No. 31 at 2 (C.D. Cal. Oct. 15, 2020).

As the court held previously, *Elkies* is distinguishable: there was no express disclosure that the "medicine in the [Infants'] bottle is exactly the same, and provided at the exact same concentration, as Children's[.]"[17] Order, No. 17-cv-07320-GW, ECF No. 53 at 9. In *Elkies*, the picture of a mother and baby ("along with the word 'Infants'" but without the express disclosure that the medicine was the same) could lead a "significant portion of the general consuming public" to conclude that the infants' product was "unique or specially formulated for children under two." *Id.* By contrast, the front label here expressly discloses the medicine's composition.

In *Youngblood*, involving the products in this case, the court held that the front labels — with their different photographs of children of different ages — plausibly pleaded consumer deception (in the form of a belief that the product was formulated for infants) in part because the label branded the products for "children under two." Order, No. 2:20-cv-06251-MCS-MRW, ECF No. 31 at 7–8. To support that conclusion, the court cited *Mullins v. Premier Nutrition* for the proposition that a reasonable consumer would believe that the offending product was "specially

---

[16] *Id.* at 21–22.

[17] Order – ECF No. 36 at 9.

1    formulated for infants." *Id.* at 7 (citing *Mullins*, 178 F. Supp. 3d 867, 891 (N.D. Cal. 2016)).

2    *Mullins* involved a dietary product that claimed it promoted joint health. 179 F. Supp. 3d at 891.

3    On summary judgment, the *Mullins* court held that the plaintiff raised triable issues of fact that

4    consumers bought the product to reduce joint pain and stiffness and that the product (characterized

5    as snake oil) did not work. *Id.* at 875–76, 892.

6          But here (and in *Youngblood*), the plaintiffs do not challenge the efficacy of the product (a fact

7    disputed in *Mullins*) and instead challenge marketing that allegedly misleads a consumer into

8    believing that the medicine is specially formulated for children under age two. Like the products in

9    *Boris*, products that are identical can be marketed to different audiences: migraine-headache

10   sufferers and regular-headache sufferers, parents of infants and parents of children, adults and

11   children (or other age ranges), professional athletes and weekend athletes, or different genders, to

12   name a few. If the labels are accurate, and the difference is only the pricing, then the claim is not

13   justiciable. *Boris*, 35 F. Supp. 3d at 1169–71. *Mullins* — a case about an allegedly ineffective

14   product — does not compel the conclusion that the plaintiff pleads plausible claims when the label

15   discloses what the consumer is purchasing. "What ultimately dooms Plaintiff's claims is that

16   Defendant tells the consumer exactly what she is getting: the package actually discloses the fact

17   that Plaintiff complains it omits." *Dinan v. Sandisk LLC*, No. 18-CV-05420-BLF, 2019 WL

18   2327923, at *7 (N.D. Cal. May 31, 2019) (cleaned up).

19         For this reason, the plaintiff's citation to other cases involving products that were marketed as

20   effective (when they allegedly were not) does not compel a contrary conclusion.[18] *See, e.g.*, *Brady

21   v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172–73 (2018) (label for one-a-day vitamins was

22   misleading because the serving size was two vitamins); *Warner-Lambert Co. v. BreathAsure, Inc.*,

23   204 F.3d 87, 89, 97 (3rd Cir. 2002) (BreathAsure was a misleading name because there was no

24   scientific foundation for the conclusion that the capsules were effective against bad breath);

25   *Novartis v. Consumer Health, Inc. v. Johnson & Jonson-Merck Consumer Pharm. Co.*, 290 F.3d

26   578, 589 (3rd Cir. 2002) ("Night Time Strength" necessarily implied a false message that the

27

28   ────────────────
     [18] Opp'n – ECF No. 46 at 15–16.

United States District Court
Northern District of California

1  product possessed "a quality that is particularly efficacious for those suffering from heartburn at

2  night"). The claim here is not that the Infants' product was ineffective or did not perform as

3  advertised. To the contrary, the representations on the label are accurate.

4     A final point is that the products are different. They are marketed in different quantities (two

5  ounces for the infants' product and four ounces for the children's product) and with different

6  devices to deliver the doses (a syringe for infants and a cup for children).

7     Often claims involving misleading labels involve questions of fact "not appropriate for

8  decision" on a motion to dismiss. *Williams*, 552 F.3d at 938; *Zeiger v. WellPet LLC*, 304 F. Supp.

9  3d 837, 852 (N.D. Cal. 2018). That is not the case here. The labels are accurate. The challenge in

10  the end is to pricing, which is not justiciable. *Boris*, 35 F. Supp. 3d at 1171–72.

11

12                    **CONCLUSION**

13  The court grants the motion to dismiss with prejudice. This disposes of ECF No. 42.

14

15     **IT IS SO ORDERED.**

16  Dated: February 18, 2021       _____

17                    LAUREL BEELER
                     United States Magistrate Judge

*United States District Court*
*Northern District of California*